DEPARTMENT OF REVENUE, Commonwealth of Kentucky, Appellant,

v.

INDIAN HEAD MINING COMPANY, INC., et al., Appellees.

Supreme Court of Kentucky.

March 19, 1976.

William S. Riley, Asst. Atty. Gen., William P. Sturm, Atty., Legal Staff, Dept. of Revenue, Frankfort, for appellant.

A. P. Gullett, Cooper, Gullett, Combs & Engle, Hazard, for appellees.

PALMORE, Justice.

The question here is whether a piece of equipment used in connection with a coal-mining operation is exempt from the use tax (KRS 139.310) under KRS 139.480(8) and KRS 139.170.

KRS 139.480(8) excludes from the tax "Machinery for new and expanded industry," which is defined by KRS 139.170 as "that machinery used directly in the manufacturing process," etc.

The appellee is engaged in a form of deep-mining called "punch-mining." A bulldozer and end-loader, or "wheel loader," are used to clear the overburden from a seam of coal, which is then undercut, blasted loose, and removed to a dumping point outside the mine entrance, where the wheel loader is used to pick up the coal and put it into trucks. The coal is thence hauled by truck to the tipple for cleaning, sizing and ultimate shipment by rail to the appellee's customers. The Board of Tax Appeals held (emphasis added) "that the 745 wheel loader is used directly in the *mining or manufacturing* process even though it is used 20% of the time for opening the mine entrance and 80% of the time for loading coal. Either or both of these uses are within the *mining and manufacturing process*." This order was upheld on appeal to the Franklin Circuit Court, following which this court granted a motion for appeal by the Department of Revenue.

KRS 132.200, which pertains to ad valorem taxes, excludes certain classes of prop-

erty from local taxation. One of these is: "Machinery and products in course of manufacture, of individuals or corporations actually engaged in manufacturing," etc. In *Colley v. Eastern Coal Corporation,* Ky., 470 S.W.2d 338, 340 (1971), this court held that the process by which coal is cleaned, sized and made ready for marketing does not constitute "manufacturing" within the meaning of that statute, because "the basic character and kind of material processed by Eastern remained the same throughout the process. The substance was coal when it was extracted from the mine and subjected to the processing, and it was coal at the conclusion of the processing. . . . We choose . . . to give full force here to the proposition . . . that processes designed to remove impurities from raw materials while leaving the latter unchanged are not manufacturing processes within the tax-exemption statutes." 470 S.W.2d at p. 340.

That the obvious purpose of KRS 139.-480(8) was to encourage "new and expanded industry" does not obscure the unequivocal language of KRS 139.170 limiting such machinery to that which is used in the process of manufacturing. The processing of coal following its extraction from the earth has been categorically held *not* to be manufacturing. It is inescapable that neither can the mere physical transfer of material from one place to another in the course of a nonmanufacturing process be itself called "manufacturing." If this result does not comport with the objectives of the statute, the remedy is a matter of legislation, wherein the limitation originated.

*Schenley Distillers, Inc. v. Commonwealth,* Ky., 467 S.W.2d 598 (1971), involving a conveyor system used in bottling liquor, is not in point, because there the whole operation was a manufacturing process, whereas in this instance the whole operation is a nonmanufacturing process.

We express no opinion with respect to the propriety, *vel non,* of the revenue department's administrative regulation (SU 6–1) purporting to classify the extraction phase of coal mining as a manufacturing process.

The cause is reversed with directions that a new judgment be entered in conformity with this opinion.

All concur.