**DEPARTMENT OF REVENUE, Commonwealth of Kentucky, Appellant,**

v.

**STATE CONTRACTING AND STONE COMPANY, INC., Appellee.**

Court of Appeals of Kentucky.

July 22, 1977.

Discretionary Review Granted Nov. 14, 1977.

William S. Riley, Asst. Atty. Gen., Dept. of Revenue, William P. Sturm, Legal Staff, Dept. of Revenue, Frankfort, for appellant.

Clarence Bartlett, Bartlett, McCarroll & Nunley, Owensboro, for appellee.

Before COOPER, LESTER and WHITE, JJ.

COOPER, Judge.

This is an appeal from a judgment of the Ohio Circuit Court overruling an order of the Kentucky Board of Tax Appeals which affirmed a ruling of the Kentucky Department of Revenue assessing additional sales and use taxes against the appellee, State Contracting and Stone Company, Inc., in the amount of $8,688.86, excluding interest, for the audit period of January 1, 1970, through December 31, 1973.

There are three (3) items in controversy as follows:

1. One Model A–2250 Hot Storage Bin consisting of:
   (a) Hot storage bin
   (b) Service stairway
   (c) Bin insulation and exterior siding
   (d) Bin heat coils and blending and homogenizing units
   (e) Temperature indicator
   (f) ABC electronic truck loading facility
2. Pollution Control Unit, and being: A system of specially designed piping consisting of main and numerous laterals, each lateral containing jets, having a pump, an integral part thereof, which pumps water through

the system along with properly proportioned chemicals required in pollution control system.

3. Loader and being: An item of machinery, a wheel propelled piece of machinery, with bucket on front end, the control of which is caused and regulated by and through hydraulic appliances, a built-in portion of the aforementioned loader; the loader being used to transport limestone aggregate from stockpiles and occasionally from pit and to dump such material into the asphalt mixing plant for further processing.

The issues are (1) whether State Contracting and Stone Company, Inc. qualifies for a tax exemption under KRS 139.480(4) and KRS 139.170 as, " . . . machinery for new and expanded industry that is used directly in the manufacturing process, which is incorporated for the first time into the plant facilities established in this state, and which does not replace machinery in such plants", and (2) whether there was lack of substantial evidence to support the Board's decision that the equipment in controversy is not used directly in the manufacturing process.

It appears from the record in this case that in the storage bin the manufacturing process is concluded.

When the bituminous substance leaves the preliminary mixing plant it consists of limestone rock, some being coarse particles and some of it fine particles which segregate, with the large particles of rock coming to rest on the outside of the bin and the fine particles to the middle. Particular note is taken of these questions on cross-examination and the answers thereto in the hearing before the Board of Tax Appeals:

"Q. What happens to the asphalt in the holding bins? Is it held there until it's ready to be weighed and put into a truck?

A. Yes, it's homogenized and the temperature stabilized and—

Q. What do you mean by homogenized?

A. Well, in the operation of an asphalt plant, you have a, you don't have a constant temperature, you would like to have, but it's difficult to maintain a constant temperature of the mixed (sic), it if's dumped directly into the truck."

The bin in controversy contains blending units. There are baffles in the bins which are used for cross blending as the material flows out of the bin into the truck.

Mr. Dean McClatchey, the only witness who testified in the case, was asked this question and made this answer:

"Q. What would happen if you did have this blending unit? What would happen to the asphalt? (Of course, the word 'not' is left out of the question)

A. It would not meet any uniform grade issuance and temperature. As the asphalt is dumped into the bin, the coarser particles have a tendency to segregate to the outside of the load and the bin, and the fine particles to the middle."

And this question and answer:

"Q. Why did you decide to install the hot mix storage bins in controversy?

A. Well, . . . It makes a better mix, a more workable mix . . ."

■ The trial court held that said Board's Findings of Fact relating to said bin are not supported by substantial or any evidence and, therefore, do not support the Board's order, decision or award; and it is ordered that same be reversed, set aside and held for naught. The trial court also held that said bin involved is exempt from the Kentucky Sales and Use Tax, being machinery for new and expanded industry and "directly used in the manufacturing process."

We agree with the trial court.

In *Schenley Distillers, Inc. v. Commonwealth ex rel. Luckett,* Ky., 467 S.W.2d 598 (1971), the court held that maintenance materials which are essential to the manufacturing process are "used directly" in the manufacturing process and, therefore, are exempt from sales and use tax.

**168**

The Board contends that the pollution control equipment is not exempt, even though it is mandatorily required by state and federal regulations before the plant can be operated.

The trial court found that the pollution control equipment involved is exempt from the Kentucky Sales and Use Tax because without the pollution control system, the asphalt bituminous product cannot be manufactured at all, and for that reason it is "directly involved in the manufacturing process".

We agree with the trial court.

The Board found that the scoop loader was taxable.

Mr. McClatchey testified the scoop loader spent 80% of its time *loading* limestone into trucks for use by appellant and its customers. We disagree with appellant's argument that *Schenley Distillers, supra,* is in point here. We think the Kentucky Supreme Court's recent decision in *Department of Revenue v. Indian Head Mining Co., Inc.,* Ky., 534 S.W.2d 805 (1976) is controlling. The controversy in *Indian Head, supra,* centered around a wheel loader the function of which was to load coal as it came from the mine into trucks for transportation to the tipple. The Court stated:

> The processing of coal following its extraction from the earth has been categorically held *not* to be manufacturing. It is inescapable that neither can the *mere physical transfer of material from one place to another* in the course of a non-manufacturing process be itself called "manufacturing". (Emphasis added)

Since the scoop loader here functions similarly to the wheel loader in *Indian Head, supra,* in that both machines were used primarily for the "physical transfer of material from one place to another", we conclude the scoop loader is taxable.

The trial court found the scoop loader to be exempt from taxation for the reason it is "directly involved in the manufacturing process".

We disagree with the trial court for reasons above stated.

It is our opinion that the trial court should be affirmed as to the storage bin and the pollution control equipment, and reversed as to the scoop loader.

The judgment is affirmed in part and reversed in part and remanded to the trial court to direct the Board for findings not inconsistent with this opinion.

All concur.