**SCHENLEY DISTILLERS, INC.,**
Appellant,

v.

**COMMONWEALTH of Kentucky, ex rel.
James E. LUCKETT, Commissioner of
Revenue and Kentucky Board of Tax Appeals, Appellees.**

Court of Appeals of Kentucky.

May 28, 1971.

William P. Curlin, Jr., Hazelrigg & Cox, Frankfort, for appellant.

John B. Breckinridge, Atty. Gen., William S. Riley, Asst. Atty. Gen., Cyril E. Shadowen, Dept. of Revenue, Frankfort, for appellees.

CLAY, Commissioner.

This controversy involves the question of appellant's liability for sales and use taxes under KRS 139.200 and 139.310 on the purchase of certain machinery and chemicals used in its distillery bottling operations. The Board of Tax Appeals upheld deficiency assessments of the Department of Revenue with respect to both items, and the circuit court affirmed on appeal.

A procedural problem raised by the Commonwealth on cross-appeal will first be disposed of. It moved to dismiss the appeal from the Board of Tax Appeals to the Franklin Circuit Court on the ground that it was not timely filed, which motion was overruled. KRS 131.370 authorizes an appeal within 30 days after a final order of the Board of Tax Appeals. A question is raised with respect to the date the order under consideration became final, but

we will assume it was the date of its entry on April 21, 1967. The appeal was filed on the following May 22. May 21 was a Sunday. The Commonwealth contends that KRS 446.030(1) controls, while appellant contends CR 6.01 is applicable.[1] Under the statute the appeal would have been a day late but under the Civil Rule it was in time. In Commonwealth Dept. of Highways v. Crutchfield, Ky., 365 S.W.2d 102, 103 (1963), we held that:

"The matter of appeal from a board to the circuit court is a strictly procedural matter and CR 6.01 should govern the method of computing time."

It could be argued, although the question is not raised by the Commonwealth, that the decision in Crutchfield was inconsistent with such cases as Casey v. Newport Rolling Mill Co., 156 Ky. 623, 161 S.W. 528 (1913); Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152 (1918); and Blue Grass Mining Co. v. North, 265 Ky. 250, 96 S.W.2d 757 (1936). This line of cases would seem to support the principle that until a party is properly in court on an appeal from an administrative order the statutory law rather than procedural rules govern the proceedings. However, since Crutchfield appears to be our latest pronouncement on the subject, we believe appellant had a right to rely upon it, and, particularly in view of the fact that this question is not likely to again arise because of the 1970 amendment to KRS 446.030, we rule that the appeal was timely.

The machinery sought to be taxed is a part of appellant's conveyor system utilized in its liquor bottling process. It consists of three lines which carry cases of empty bottles from a loading point to the bottling lines. The process is continuous in this conveyor system from the movement of empty bottles through the bottling process and into filled cases of the ultimate product.

KRS 139.480(8) exempts machinery for new and expanded industry from sales and use taxes. Insofar as pertinent here, KRS 139.170 defines such machinery as that "used directly in the manufacturing process". The Board took the view that the manufacturing or processing had not directly commenced at the time of the movement of empty bottles on the conveyor. It decided that "use of this conveyor system precedes direct use in the manufacturing process" and therefore it was subject to the use tax.

It is apparently admitted by the Department that the machinery operating on the bottling lines is tax exempt. It seems obvious that the bottles are a part of the ultimate product manufactured by appellant. The conveyance of empty bottles to the bottling lines is integrated in the operation. It is as much a part of the process as filling the bottles. The whole conveyor system is used directly in that process. In Niagara Mohawk Power Corp. v. Wanamaker, 286 App.Div. 446, 144 N.Y.S.2d 458 (1955), the taxpayer was engaged in the production of electricity. It purchased coal-and-ash-handling equipment which brought the fuel and residue to and from boilers. It was held that the process was synchronized and integrated and that the words "directly and exclusively" should not be construed to require the breakdown of the manufacturing process into distinct stages. So here.

In Alabama . Power Company v. State, 267 Ala. 617, 103 So.2d 780 (1958), the taxpayer also produced electricity. One of the items claimed exempt from the use tax as a part of the manufacturing process was equipment used for unloading coal barges. It was held that this equipment was part of the manufacturing process, even though it involved the interplant transportation of raw materials.

■ The case the Department principally relies upon, General Motors Corp. v. Bowers, 164 Ohio St. 574, 132 N.E.2d 213,

---

1. The statute was amended in 1970 (Chapter 98, 1970 Kentucky Acts, page 471) to substantially conform to CR 6.01.

215 (1956), makes a significant distinction with respect to the transportation or movement of materials within a plant. It was there held that transportation to or from a particular activity generally does not involve tax-exempt machinery. The court went on to observe, however, that a distinction must be made when the transportation "is a part of that activity or between essential steps of that activity". The conveyor system here involved, from beginning to end, is an integrated part of the production process and the first movement is as essential as the last. The machinery is clearly "used directly in the manufacturing process" and is tax exempt.

■ The chemical in question bears the trade name Pennsalt. It is a solution used to clean evaporator tubes which are utilized in converting distiller's "slop" into a cattle-and-chicken-feed product. The statute does not specifically exempt *materials* used in the manufacturing process. However, the Department by regulation has prescribed that certain materials consumed during the manufacturing process are exempt on the theory that they may be considered as having been purchased for resale in the form of another product. Not only does the Department's regulation SU–5 exempt materials "which enter into and become an ingredient or component part of the manufactured product" but also:

> "Materials, supplies (including molds, lubricating and compounding oils, grease, machine waste, abrasives, grinding balls, grinding wheels, chemicals, solvents, fluxes, anodes, fire brick, catalysts, filtering materials, dyes, refrigerants, explosives, etc.), and industrial tools (jigs, dies, drills, cutters, rolls, reamers, chucks, saws, spray guns, etc.) which are directly used in manufacturing or industrial processing, if such materials, supplies or industrial tools have a useful life of less than one year." [2]

The chemical here in question would appear to fall within such a category. The maintenance of the evaporator tubes in working condition is an essential part of the manufacturing process. In Commonwealth v. Yorktowne Paper Mills, Inc., 426 Pa. 18, 231 A.2d 287 (1967), the taxpayer used certain coagulating and softening chemicals in the boilers of its paper mills for the purpose of eliminating scale and corrosion. In determining that such chemicals were exempt from sales and use taxes, the Pennsylvania Supreme Court said (page 289 of 231 A.2d):

> "Since it is admitted that the boiler itself is exempt from taxation, the inevitable conclusion follows that it is admitted that the boiler is directly used in the manufacturing operation. The chemicals sought to be taxed are employed to keep the boiler in good operating condition. Simple logic leads to the conclusion that the chemicals are thus an important and integral part of the manufacturing operation, and that part a direct one."

In United Aircraft Corporation v. Connelly, 145 Conn. 176, 140 A.2d 486 (1958), it was held that X-ray films and laboratory chemicals consumed in the testing of material parts were used as part of the manufacturing process and were exempt from sales and use taxes.

The Department cites Cheney v. Georgia-Pacific Paper Corporation, 237 Ark. 161, 371 S.W.2d 843 (1963), wherein it was held that certain chemicals and equipment used for cleaning purposes were not exempt from the Arkansas use tax. However, the statute involved specifically provided that materials "not directly used in the primary production processing or manufacturing" were not exempt. Neither our statute nor the Department's regulations contain such a provision.

2. Some question may be raised as to whether this regulation creates exemptions not contemplated by the legislature, but that issue is not presented in this case.

Although, as the Department argues, tax-exemption statutes are strictly construed against the taxpayer, we also must take into consideration the objective of the legislature in creating particular exemptions to encourage the location and expansion of industries in Kentucky. In our opinion both items herein considered fall within the scope of machinery and materials the legislature intended to exempt.

The judgment is reversed, with directions to enter a new judgment consistent with this opinion.

All concur.