COMMONWEALTH of Kentucky,
DEPARTMENT OF REVENUE,
Appellant,

v.

KUHLMAN CORPORATION and
Kentucky Board of Tax
Appeals, Appellees.

Supreme Court of Kentucky.

March 14, 1978.

Rehearing Denied May 2, 1978.

---

William S. Riley, Asst. Atty. Gen., The Kentucky Dept. of Revenue, Frankfort, Glenn McDonald, Louisville, for appellant.

Edward M. Steutermann, Wood, Goldberg, Pedley & Stansbury, Louisville, for appellees.

PER CURIAM.

Kuhlman Corporation was engaged in the manufacturing of transformers. The issue is whether a computer utilized by Kuhlman was "machinery for new and expanded industry," as provided by KRS 139.480, and therefore exempt from sales tax. The trial court upheld the Kentucky Board of Tax Appeals' decision that the computer met the requirements of the statute and was exempt from sales tax. We reverse.

KRS 139.170 provides that " 'Machinery for new and expanded industry' shall mean that machinery used directly in the manufacturing process . . . " Portions of testimony given by George Clark and Robert Heister, controller and processing manager, respectively, of Kuhlman were as follows:

"Q. And now, the system you said was designed to receive feedback from the manufacturing facility, how would this be done?

A. In the form of cards. The laborer, each laborer is required to write on his labor ticket as he works the specific shop order he is working on, the work center he is working in, and the operation he is performing. He reports that on the cards and feeds that back to the computer. That tells me where at any time where this item is and the stage of production."

\*     \*     \*     \*     \*     \*

"Q. Are these the labor tickets you were talking about?

A. No sir, these are material cards, punch cards.

Q. The system is designed to receive feedback cards. What do they tell you?

A. That card has pre-punched information in it as well as hand written information. The card is furnished by our department with a shop order, part number, quantity, start date and due date for a particular component completion. That information is pre-punched and printed on the card for this shop. Upon completion of that component, the particular individual writes the number completed and whether it is complete or partial, returns it to us and that transaction becomes data to release material."

\*     \*     \*     \*     \*     \*

"Q. Now, you mentioned paragraph 5 of your summary, that completion of component parts is recorded on feedback cards.

A. That's correct."

\*     \*     \*     \*     \*     \*

"Q. Now, does he fill this labor ticket out as he finishes the job in question?

A. Yes.

Q. What does he do with that labor ticket?

A. At the end of the day he turns this labor ticket in for our hourly report.

Q. So it goes back to your area for—

A. Data processing, yes.

Q. So, is this information ultimately fed into the computer?

A. Yes, it is."

\*     \*     \*     \*     \*     \*

"Q. Let me ask you in summary, what output is the computer designed to have with instructions to manufacturers?

A. Overall it would be the facilitating the production cycles to the extent of providing information to each department within the plant on a timely and accurate basis upon which the operators and men in the shop can perform their particular jobs."

\*     \*     \*     \*     \*     \*

"Q. So there is no real direct contact between the processing area and the data processing area, directly?

A. You mean from the standpoint of personally going into the room?

Q. No, in other words, the computer is not connected by wires to certain manufacturing equipment?

A. No.

Q. In other words, the computer doesn't feed information to manufacturing component and it is manufactured. There has to be a laborer there, doesn't there?

A. That is correct. It is not impossible to do that."

\* \* \* \* \* \*

"Q. Where is it situated in the plant.

A. It is sitting in the office adjacent to the plant.

Q. It is not in the manufacturing area per se?

A. No."

The main function of the computer as we see it was to receive data placed on prepunched cards by the workmen, process the data and release information and instructions designed to assist the plant personnel in performing their duties. It remained in the office with no wires connecting it with the production machinery, and it did not participate in the physical production of the transformers. No doubt it expedited the means of production but it was not " . . . machinery used directly in the manufacturing process, . . . " In arriving at this conclusion we adhere to KRS 446.080(4) which provides in part, "All words and phrases shall be construed according to the common and approved usage of language, . . . "

The judgment is reversed and the case is remanded with directions that the board hold that the computer was not machinery used directly in the manufacturing process.

All concur.