**John McD. ROSS et al., Movants,**

v.

**GREENE & WEBB LUMBER CO., INC., Respondent.**

Supreme Court of Kentucky.

May 23, 1978.

William S. Riley, William P. Sturm, Dept. of Revenue, Frankfort, for movants.

Ronald G. Polly, Gene Smallwood, Jr., Polly, Craft & Asher, Whitesburg, for respondent.

JONES, Justice.

This appeal arises from the action of the Kentucky Department of Revenue which assessed Greene & Webb Lumber Company, Inc., the sum of $5,438.40 in sales and use tax under KRS 139.170. The assessment was based on the lumber company's purchase of certain items of equipment which the Department of Revenue contends do not qualify for exemption as machinery for new and expanded industry under KRS 139.480(8) and KRS 139.170.

Greene & Webb Lumber Company, Inc., conducts its business in Letcher County as a sawmill and lumberyard. A number of items of equipment were installed and used by it in its business during the years 1967, 1968 and 1969. The trial court found a number of items exempt as machinery for new and expanded industry under KRS 139.480(8) and KRS 139.170. The Kentucky Department of Revenue appealed to the Court of Appeals of Kentucky. In an opinion the Court of Appeals affirmed the trial court. The Kentucky Department of Revenue filed a motion for discretionary review, which was granted. It contends that the Court of Appeals erroneously held that 15 items are used directly in the manufacturing process and therefore are entitled to the exemption allowed by the statute.

The question presented is whether certain items used in a sawmill operation are ex-empt from Kentucky sales and use tax under KRS 139.480(8) as "machinery used for new and expanded industry." This question turns on whether the items purchased by the lumber company are used directly in the manufacturing process so as to be within the definition of KRS 139.170 and eligible for the exemption. In order that the issue be resolved, a determination must be made as to when the manufacturing process begins and ends in the operation of a sawmill.

The Department is in error when it argues that this court has not adopted the "integrated plant concept." Nothing could demonstrate more clearly this court's position than its opinion in *Schenley Distillers, Inc. v. Commonwealth ex rel. Luckett,* Ky., 467 S.W.2d 598 (1971). *Schenley, supra,* dealt with the bottling of whiskey which this court noted was a continuing process with empty bottles moving on a conveyor belt through the filling procedure. The Board of Tax Appeals held the conveyor taxable because it was viewed as preceding the manufacturing process. This court held otherwise, citing *Niagra Mohawk Power Corporation v. Wanamaker,* 286 App.Div. 446, 144 N.Y.S.2d 458 (1955). In *Schenley, supra,* this court said of *Niagra, supra:*

> "It was held that the process was synchronized and integrated and that the words 'directly and exclusively' should not be construed to require the breakdown of the manufacturing process into distinct stages. So here." *Schenley, supra,* at 599.

The court further applied the reasoning in *Niagra, supra,* to the conveyor system in the *Schenley* case, *supra:*

> "The conveyor system here involved, from beginning to end, is an integrated part of the production process and the first movement is as essential as the last. The machinery is clearly 'used directly in the manufacturing process' and is tax exempt." *Schenley, supra,* at 600.

The process of turning logs into lumber is comparable to the bottling procedure in *Schenley.* Prior to the operation of a saw-

mill, timber is cut and transformed into logs. The logs are taken to the sawmill and placed in stacks. They are moved from the stacks to a conveyor which carries them on to a debarker. After the logs are squared, the slabs are conveyed to a chipper, which produces pulp chips. The squared logs are then sawed into rough lumber and moved to stacking sheds for air-drying. Waste material, such as unused slabs, bark and dust, are conveyed to a refuse burner. The operation of the mill also entails the maintenance and repair of saws, chippers, and other equipment. This court is of the opinion that the manufacturing process in this case begins when the logs are taken from the stacks and moved onto the conveyor. The manufacturing process ends after the lumber is air-dried so that it is marketable. Under the "integrated plant" theory the whole procedure in the operation of the sawmill constituted manufacturing.

■ The trial court looked to the legislative intent to determine the exemption of items used in the manufacturing process, and in so doing, gave a good definition of the manufacturing process when he stated:

> "To conform to the legislative intent the manufacturing process should begin when the raw material (logs here) starts moving in a chain of unbroken, integrated sequence into the plant or mill and ends with a generally accepted saleable product. The machinery necessary and exclusively used in this chain should make up the machinery used directly in the manufacturing process."

This court does not accept the Department's theory that the "integrated plant theory is not and should not be the law in Kentucky." It is obvious that the legislative intent in enacting the exemption statute was to enhance Kentucky's competitive position in manufacturing.

The Court of Appeals of Kentucky concluded:

> "The beginning product is a log and the end product is marketable rough-sawed lumber or pulp and the entire process occurs on the sawmill yard."

This court is of the view that all of the items held exempt by the trial court and the Court of Appeals constituted equipment used at the sawmill to carry logs to the conveyors and to transfer the lumber to the drying sheds, and are essential to the total process of manufacturing. All the items are therefore exempt as being "directly used in the manufacturing process."

The judgment of the Court of Appeals is affirmed.

All concur.