DEPARTMENT OF REVENUE, Movant,

v.

STATE CONTRACTING AND STONE CO., INC., Respondent.

Supreme Court of Kentucky.

Sept. 19, 1978.

William S. Riley, Asst. Atty. Gen., William P. Sturm, Atty., Legal Staff, Dept. of Revenue, Frankfort, for movant.

Clarence McCarroll, Bartlett, McCarroll & Nunley, Owensboro, for respondent.

JONES, Justice.

The question presented is whether certain pollution control equipment and hot-mix storage bins used by State Contracting and Stone Co., Inc. are exempt from sales and use tax as "machinery used in new and expanded industry" as defined in KRS 139.-170.[1]

State Contracting and Stone is a corporation engaged in quarrying limestone at Hartford, Kentucky, and manufacturing asphalt at Owensboro, Kentucky. After the limestone is quarried it is broken into various sizes by a "crusher". It is then transported by State Contracting and Stone to its Owensboro plant where it is manufactured into asphalt.

In conformity with federal law and regulations State Contracting and Stone added pollution control equipment to its crusher so as to regulate the emission of dust. It is conceded by the parties that the pollution control equipment was required by federal law as a prerequisite to the continued operation of the Hartford plant.

Prior to the installation of two "hot-mix storage bins" by State Contracting and Stone Company, as soon as the asphalt was manufactured it was necessary to immediately transport it by truck to designated job sites because it would harden and become unuseable. In the operation of an asphalt plant it is necessary to have a constant temperature. That is difficult if it is dumped directly into trucks. However, when the asphalt is placed in the bins it continues to be heated and blended. Thus, the asphalt is "homogenized and the temperature is stabilized".

The Department of Revenue assessed a use tax deficiency against State Contracting and Stone in the amount of $8,688.86, excluding interest, for the audit period of January 1, 1970, through December 31, 1973, on the pollution control equipment, the hot-mix storage bins and a scoop load-

er.[2] State Contracting and Stone appealed the assessment to the Kentucky Board of Tax Appeals. The board affirmed the ruling of the Department of Revenue. State Contracting and Stone appealed to the circuit court of Ohio County. The trial court held the pollution control equipment and hot-mix storage bins exempt. The Department of Revenue appealed to the Court of Appeals which affirmed the trial court. This court granted discretionary review.

This court now directs its attention to the question whether the pollution control equipment and the hot-mix storage bins are "used directly in the manufacturing process". If so, then by the terms of KRS 139.170 the property in question is exempt from state sales and use tax for "machinery used in new and expanded industry". KRS 139.480(8).

### The Pollution Control Equipment

■ It is conceded by the Department of Revenue that the limestone crusher is directly used in manufacturing of asphalt. This court is of the view that the pollution control equipment is indispensible to the operation of the "crusher", which is *directly* engaged in manufacturing. The pollution control equipment is mandated by federal law and regulations. Without it, State Stone and Contracting could not operate. There would of necessity be a cessation of its manufacturing of asphalt. To hold that the pollution control equipment is not an essential part of the manufacturing process of asphalt would thwart the legislative intent of KRS 139.480(8) "to enhance Kentucky's competitive position in manufacturing". *Ross v. Greene and Webb Lumber Co., Inc.,* Ky., 567 S.W.2d 302 (1978).

### The Hot-Mix Storage Bins

■ It is the view of a majority of the members of this court that the component parts of the asphalt bituminous product as

---

1. "That machinery used *directly* in the manufacturing process, which is incorporated for the first time into plant facilities established in this state, and which does not replace [new] machinery in such plants".

2. The scoop loader is not involved in this appeal.

it flows into the hot-mix storage bins is an unfinished product, not sufficiently blended and not uniformly heated. There are baffles in the bin which cross blend the component parts of the asphalt bituminous material, thus producing a homogenous finished product. The manufacturing of the asphalt is not finished until it is homogenized, blended and the fine and coarse particles of the aggregate are properly and uniformly mixed, and the product is uniformly mixed and heated. Thus, the hot-mix storage bins are used "directly in the manufacturing process" of the asphalt.

The pollution control equipment and the hot-mix storage bins are exempt from the Kentucky sales and use tax as machinery for new and expanded industry and are "directly used in the manufacturing process."

The judgment of the Court of Appeals is affirmed.

PALMORE, C. J., and CLAYTON, JONES, LUKOWSKY and REED, JJ., concurring.

STEPHENSON and STERNBERG, JJ., dissent. STEPHENSON, J., filed a dissenting opinion in which STERNBERG, J., joined.

STEPHENSON, Justice, dissenting.

I dissent from that portion of the majority opinion which holds that the hot-mix storage bins are used "directly" in the manufacturing process.

Prior to installation of the hot-mix storage bins, the respondent carried on a presumably profitable business of manufacturing hot asphalt, loading the manufactured product immediately into trucks for delivery to customers. In my view the manufacturing process was completed and the addition of the hot-mix storage bins was merely for the convenience of the respondent. These bins permitted respondent to store the hot asphalt for a period of time and obviated the necessity for immediate transportation to the customer. The bins at most improved the product somewhat by blending and thoroughly mixing the large and small particles of stone used in the hot asphalt according to respondent and presumably enhance the profit on the completed product. In my opinion, equipment placed in use in a manufacturing plant for the convenience of the taxpayer and enhancement of profit on a manufactured product does not qualify for the exemption provided for in KRS 139.170. As set out in the opinion of the Court of Appeals, the reason for the installation of the bins was "It makes a better mix, a more workable mix." The thrust of the argument by respondent is not that the hot-mix storage bins are an integral part of the manufacturing process, but that these bins "improve the product."

It is not argued by respondent that the hot-mix storage bins are an integrated part of the manufacturing process, thus "directly" used in the manufacturing. We do not have here the integrated plant theory which resolved the dispute in *Schenley Distillers v. Commonwealth, ex rel. Luckett,* Ky., 467 S.W.2d 598 (1971), and approved in *Ross v. Greene & Webb Lumber Co., Inc.,* Ky., 567 S.W.2d 302 (1978).

The majority opinion takes the view that the product is unfinished before being placed in the hot-mix storage bin, concluding that the manufacturing process had not been completed. This is an untenable conclusion in view of the fact that the manufacturing process was carried on and the product sold with apparent satisfactory results before the installation of the bins.

I find no case where installation of machinery or equipment for the convenience of the taxpayer and an improvement of an already saleable product has been held tax exempt as being used "directly" in the manufacturing process. The practical effect of the majority opinion is that it effectively abolishes the limiting effect of "directly used in the manufacturing process" and gives tax exemption status to the installation of any equipment or machinery however casually related to the manufacturing process.

STERNBERG, J., joins in this dissent.