REVENUE CABINET, COMMON-
WEALTH of Kentucky, Movant,

v.

AMAX COAL COMPANY and Gibraltar
Coal Corporation, Respondents.

COMMONWEALTH of Kentucky, by and
on relation of Ronald G. GEARY, Com-
missioner of Revenue, Movant,

v.

H AND A COAL COMPANY,
Respondent.

REVENUE CABINET, COMMON-
WEALTH of Kentucky, Movant,

v.

HARBERT CONSTRUCTION CORP.
and Star Fire Coals, Inc.,
Respondents.

Supreme Court of Kentucky.

Sept. 25, 1986.

Rehearing Denied Nov. 26, 1986.

Nathan Goldman, Ross T. Carter, Legal Services Section, Frankfort, for Revenue Cabinet.

Jackson White, Stoll, Kennon & Park, Lexington, for Amax Coal Co.

William A. Hoskins, Lexington, for amicus curiae.

Earl M. Cornett, Hindman, for H and A Coal Co.

Paul Shapiro, Benton, for Harbert Const. Corp.

STEPHENS, Chief Justice.

The issue to be determined on this appeal is whether the statutory sales and use tax exemption for machinery "used directly" in the manufacturing process is applicable to certain items owned by the respondents; Amax Coal Company and Gibraltar Coal Corporation, H and A Coal Company, and Harbert Construction Corporation and Star Fire Coals, Inc.

KRS 139.480(8) provides an exemption from sales and use taxes on "[m]achinery for new and expanded industry." We are concerned here with the interpretation of the statutory definition of such machinery. KRS 139.170 states:

"Machinery for new and expanded industry shall mean that machinery *used directly in the manufacturing or processing production process*, which is incorporated for the first time into plant facilities established in this state, and which does not replace machinery in such plants. The term 'processing production' shall include: the processing and packaging of raw materials, in-process materials, and finished products; the processing and packaging of farm and dairy products for sale; and the *extraction of minerals, ores, coal, clay, stone and natural gas*." (Emphasis added).

In the first of the three cases (consolidated for the purposes of this appeal), Revenue Cabinet, Commonwealth of Kentucky v. Amax Coal Company and Gibraltar Coal Corporation, the Revenue Cabinet assessed sales and use taxes on nine tractors, one grader, two scrapers, a truck, and a water wagon, purchased by respondents, to be used for the reclamation of land following surface mining. The Board of Tax Appeals exempted all the machinery from sales and use tax. The Franklin Circuit Court reversed the Board and on appeal, the Court of Appeals reversed the Circuit Court, holding that the machinery was an essential and integral part of coal extraction. Because the use of the machinery was necessary for compliance with respondents' mining permit, which is essential for the continuation of respondents' business, we agree with the reasoning of the Court of Appeals and affirm.

A roof bolter, two sets of batteries for an electric coal scoop, and two battery chargers are the equipment against which the Revenue Cabinet assessed sales and use taxes in the second case, Commonwealth of Kentucky, by and on relation of Ronald G. Geary, Commissioner of Revenue v. H and A Coal Company. The Franklin Circuit Court reversed the Board of Tax Appeals' exemption of the property. The Court of Appeals then reversed the Circuit Court, holding that the machinery was used directly in the coal extraction process. We affirm.

Finally, the third case, Revenue Cabinet, Commonwealth of Kentucky v. Harbert Construction Corporation and Star Fire Coals, Inc., addresses the applicability of the sales and use tax exemption to machinery used for controlling dust, maintaining haul roads, and reclaiming strip-mined areas. The Board of Tax Appeals set aside the tax assessment on the equipment and was affirmed by the Franklin Circuit Court. The Court of Appeals affirmed, as do we.

Based on the prior decisions of this Court, we find all the machinery in question to be exempt from sales and use taxes.

In *Schenley Distillers, Inc. v. Commonwealth, ex rel. Luckett,* Ky., 467 S.W.2d 598 (1971), we addressed the sales and use tax liability for the purchase of machinery used in the conveyor system of appellant's distillery bottling operations. The Commonwealth argued that the machinery used to move empty bottles on the conveyor system was not part of the manufacturing process. However, this Court held that the "whole conveyor system is used directly in that process." *Id.* at 599. Our decision in *Schenley Distillers* was based upon the reasoning expressed in an earlier New York case, *Niagara Mohawk Power Corp. v. Wanamaker,* 286 App.Div. 466, 144 N.Y. S.2d 458 (1955). In *Niagara,* the New York court held that:

"[T]he process was synchronized and integrated and that the words 'directly and exclusively' should not be construed to require the breakdown of the manufacturing process into distinct stages." *Id.*

We further held that the conveyor system "is an integrated part of the production process and the first movement is as essential as the last" and thus, "[t]he machinery is clearly 'used directly in the manufacturing process' and is tax exempt." *Schenley Distillers, supra* at 600.

The issue in *Department of Revenue, ex rel. Luckett v. Allied Drum Service, Inc.,* Ky., 561 S.W.2d 323 (1978), was whether machinery used "to process and reconstitute used drums," a process not done by appellee prior to the purchase of the ma-

chinery, was machinery engaged in manufacturing. There, this Court defined "a manufacturing process" as:

"Material having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing by the machinery." *Id.* at 325–26.

Thus, we have already interpreted the statutory definition of the "manufacturing process" language in KRS 139.170.

 We will now define "used directly" as it appears in the statute. A computer was held not to be machinery "used directly in the manufacturing process" in *Commonwealth, Department of Revenue v. Kuhlman Corporation,* Ky., 564 S.W.2d 14 (1978). Appellee therein, a manufacturer of transformers, employed the computer to store and process data which would "assist the plant personnel in performing their duties." *Id.* at 16. Though the computer may have "expedited the means of production," it was not "used directly" in the manufacturing process. *Id.*

In *Ross v. Greene & Webb Lumber Co., Inc.,* Ky., 567 S.W.2d 302 (1978), movants maintained that the "whole procedure" used in respondent's operation of a sawmill constituted manufacturing. *Id.* at 304. We held that in order to determine whether items are exempt (i.e., whether they are "used directly in the manufacturing process") "a determination must be made as to when the manufacturing process begins and ends." *Id.* at 303. The court further stated that *Schenley Distillers, supra,* adopted the "integrated plant concept." *Id.* Thus, just as the bottling process is continuous, so is the process of turning logs into lumber and the equipment used to carry logs and to transfer the lumber to sheds "essential to the total process of manufacturing." *Id.* at 303–04.

Thus, we hold that under the integrated plant concept of *Schenley Distillers* machinery used in procedures "essential to the total process of manufacturing" are *used directly* in the manufacturing pro-

cess, and are thus exempt from sales and use taxes.

The final case for consideration in defining "used directly in the manufacturing process" is *Department of Revenue v. State Contracting and Stone Co., Inc.,* Ky., 572 S.W.2d 421 (1978). There, respondent quarried limestone and manufactured asphalt. The machinery under consideration was pollution control equipment and hot-mix storage bins. The rationale behind the exemption of the pollution control machinery was "that the pollution control equipment is indispensable to the operation of the 'crusher,' which is *directly* engaged in manufacturing." Another factor leading to exemption was that the machinery was "mandated by federal law and regulations." *Id.* at 422. The hot-mix storage bins were deemed to be exempt because they are part of the essential process of creating uniformly mixed asphalt. *Id.* at 423.

These decisions have carried out the obvious legislative intent in enacting KRS 139.-480(8) and KRS 139.170, which was "to enhance Kentucky's competitive position in manufacturing." *Ross v. Greene & Webb Lumber Co.,* Ky., 567 S.W.2d 302, 304 (1978).

■ In Amax, we must, perforce, determine whether it is possible, for purposes of the sales and use tax exemption, to strip mine coal without reclaiming the land so mined. We must determine if reclamation machinery and equipment are part and parcel of the process of "extraction of minerals, ores, *coal,* clay, stone and natural gas." We believe they are, and we believe we have answered the question in the *State Contracting and Stone Co.* case, *supra.* In *State Contracting,* the challenged equipment was to be used for pollution control, which process was mandated by federal law. In the Amax case, the challenged equipment was to be used for reclamation of land, which is also mandated by all the familiar federal and state statutes. The analogy is not only apparent but is also inescapable. One cannot strip mine coal without reclaiming the land. Strip mining

and reclamation of the land are all so legally intertwined that they are, legally, one operation—*viz,* the "extraction ... of ... coal." We concur with the Court of Appeals when it said that "[w]e do not envision any more typical situation of integration of two processes to obtain the same result."

■ In H and A Coal, the mining company uses an underground scoop powered by batteries which move loosened coal to an exterior stockpile area. The scoop requires three complete sets of batteries, each of which is used for approximately three hours while the other two are being recharged. The Revenue Cabinet allowed the sales and use tax exemption on one set of batteries but denied it on the other two sets of batteries and the battery charger. Exemption was also disallowed for a roof bolter which is used to help support the roof of one excavated area so that more coal can be mined in that area. We must decide if these items are used "directly" in the extraction of coal. Under the doctrine of *Schenley, supra,* we believe they are. Without having those sets of batteries, the scoop would only be used part-time. The batteries are not surplus or extra, but are required for the scoop to be fully operational. If the scoop and one set of batteries were exempt, so are the other sets of batteries. With regard to the roof bolters, since additional coal could not be mined without support for the "roof" of previously mined areas, it is clear that the bolter is an indispensable part of the mining process. The equipment used here as in *Schenley* is an "integrated part of the production process."

■ Finally, in Harbert, we must determine whether the machinery in question, which was used for controlling dust, maintenance of coal haul roads and reclamation, is used "directly" in the "extraction" of coal pursuant to the requirement of the exemption statute. Since the evidence shows that all of the equipment was used in the mining of coal, and in reclamation, under the dictates of *State Contracting and Stone Co., supra,* it was used "direct-

ly," and is therefore exempt from the sales and use tax.

Thus, we affirm the decisions of the Court of Appeals in all three cases.

STEPHENSON, WHITE and WINTERSHEIMER, JJ., concur.

GANT and VANCE, JJ., dissent.

LEIBSON, J., not sitting.