**REVENUE CABINET, Commonwealth of Kentucky, Appellant,**

**v.**

**KENTUCKY–AMERICAN WATER COMPANY, Appellee.**

No. 98–SC–165–DG.

Supreme Court of Kentucky.

April 22, 1999.

As Modified Aug. 26, 1999.

Cathy Cravens Snell, Division of Legal Services, Revenue Cabinet, Frankfort, KY, for appellant.

Douglas P. Romaine, Melissa A. Stewart, Roger W. Madden, Stoll Keenon & Park, LLP, Lexington, KY, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the judgment of the circuit court holding that the 1,197 miles long new water distribution system from a water treatment plant to private consumers was part of an integrated plant manufacturing process entitling the water company to a sales and use tax exemption.

The primary issue is whether the water distribution system constitutes an integrated plant manufacturing process under the statute. The necessary sub questions are whether the water distribution system and related parts and service lines are exempt from sales and use tax as machinery for new and expanded industry and if the purchase of electricity used to pump water through the distribution system after it leaves the water treatment plants should be exempt as energy used in the cost of manufacturing. Stated another way, the question is whether the water company's mains, lines and meters are used directly in the manufacturing process and are thus part of the plant facility based on the integrated plant theory.

The water company sells domestic, commercial, industrial and public authority water service in six counties of Central Kentucky. The water company distributes treated and pressurized water to individual customers through its system of water mains and also sells treated water from its clear well to municipalities who, in turn, distribute the water to their own residents and customers. During the pertinent audit period, treated water was also sold to water haulers from the treatment plant on Richmond Road.

In June of 1986, the water company contracted with the Commonwealth of Kentucky to build a new main to Georgetown, Kentucky to support the development of the Toyota automobile manufacturing facility. Upon completion of the new main, the water company sought an exemption from sales and use tax pursuant to KRS 139.480(1) and (2) and for the energy used under KRS 139.480(3) totaling $543,970 plus applicable interest for the audit period from January 1, 1986 through December 31, 1989. The Revenue Cabinet denied the request for exemption, determining that the distribution system did not constitute a manufacturing or processing facility. The water company appealed to the Kentucky Board of Tax Appeals which upheld the decision of the Revenue Cabinet after a hearing. The water company then appealed to the circuit court which reversed the decisions of the Board of Tax Appeals and permitted the tax exemptions. In a 2 to 1 vote, a panel of the Court of Appeals affirmed the decision of the circuit court. This Court accepted discretionary review.

The water company has two water treatment plants, one at River Station and the other at Richmond Road. Raw water is taken from either the Kentucky River or the Jacobson Park Reservoir and treated in a series of steps. The finished, purified water comes to rest in the clear well where it is stored until it is sold to water haulers or sent through the distribution system. There is no dispute that the water treatment plants to and including the clear well are not subject to sales and use taxation if it meets the requirements of KRS 139.170. Water treatment plants are not the subject of this appeal. The water distribution system consists of 1,197 miles of mains or pipes of varying sizes which transports the water from the clear well to the customer. The water is finished, potable and suitable for sale. A water meter measures the quantity of the water, but not its purity.

In 1986, the water company and the Commonwealth signed a contract in which the water company agreed to build a 24–inch main to Georgetown, Kentucky for the development of the Toyota automobile plant. The Commonwealth paid the water company $5,480,876 for the entire contract, including $3,439,804 for pipes, valves and fittings. The water company included the sales tax that it paid on this equipment in the contract price with the state, and the state, in turn, paid the entire bill, including sales and use tax. Here, the water company is asking the Commonwealth for a refund of the sales and use tax that the Commonwealth, as a water company customer, paid as part of the contract to construct the Toyota facility.

401 KAR 6:040 defines water treatment plant and water distribution systems separately. The water treatment plant

shall mean that portion of the water supply system which is designed to alter the physical, chemical or bacteriological quality of the water. 401 KAR 6:040(10), now amended. The water distribution system shall mean that portion of the water supply system in which the water is conveyed from the water treatment plant or other supply point to the premises of the consumer. 401 KAR 6:040(11), now amended.

The witness from the Division of Water of the Cabinet of Natural Resources and Environmental Protection, testified to the effect that the pressurization of the water is the means by which the water is delivered. Natural Resources issues two separate licenses to the water company; one, is for water treatment plants and the second is for water distribution systems.

## I

KRS 139.170 provides the definition of machinery for new and expanded industry. It states in pertinent part:

Machinery for new and expanded industry shall mean that machinery used directly in the manufacturing or processing production process which is incorporated for the first time into plant facilities established in this state, and which does not replace machinery in such plants.

Clearly there are two separate statutory requirements in order to qualify for an exemption from sales and use tax: 1) the machinery must be used directly in a manufacturing or processing production process, and 2) the machinery must be installed in a plant facility. The Revenue Cabinet argues that the water distribution system is not part of the manufacturing process because purified water is saleable from the clear well, which marks the end of the manufacturing process. The distribution lines are merely a means of transportation of the finished product.

*Ross v. Greene & Webb Lumber Co., Inc.*, Ky., 567 S.W.2d 302 (1978), defined for sales tax purposes what a manufacturing process was and when the manufacturing process began and ended. "To conform to the legislative intent, the manufacturing process should begin when a raw material (logs, here) starts moving in a chain of unbroken, integrated sequence into the plant or mill and ends with a generally accepted saleable product. The machinery necessary and exclusively used in this chain should make up the machinery used directly in the manufacturing process." *Ross, supra,* at 304. Here the manufacturing process is water purification and it ends with the saleable product, the purified water, being deposited in a clear well or storage tank. The record indicates that the water company sold finished potable water directly from the clear well to water haulers and to residential customers who lived in proximity to elevated tanks without pressurization. The Board of Tax Appeals specifically found that the water was saleable in the clear well. The circuit court also found that the water was "technically saleable" in the clear well. However, it also held that the processing continues until such time as the customer turns on the tap. The Court of Appeals relied on *Burke v. Stitzel–Weller Distillery,* 284 Ky. 676, 145 S.W.2d 861 (1940) in holding that the water must be pressurized before it can be utilized for its intended use. We agree with the dissenting opinion by Judge Huddleston to the effect that the Court of Appeals in this case vastly expanded the intended use to include transportation and delivery of the product to commercial and residential users.

This Court restated the definition of manufacturing for the purposes of sales and use tax in *Department of Revenue, ex rel Luckett v. Allied Drum Service, Inc.,* Ky., 561 S.W.2d 323 (1978), as "material having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing by the machinery." *Allied Drum, supra,* specifically overruled *Prestonsburg Water Company v. Prestonsburg Bd. of Supervisors,* 279 Ky. 551, 131

S.W.2d 451 (1939), because it did not meet such a test. The court in *Allied Drum* held that the purification of muddy water from the Big Sandy River created an end product that was water fit for use. *Allied Drum* at 325. The necessary inference is that purified water was an end product because manufacturing terminated when the water was purified.

The water company admitted through the testimony of a plant superintendent that the finished water in the clear well was a saleable product and was sold to water haulers from the clear well. The testimony also indicated that a bulk customer such as a city or water distribution company could directly access the water company's own clear well to withdraw water. The only logical conclusion is that purified water is a finished product suitable for sale before it enters the distribution system and consequently a tax exemption is not applicable.

*Revenue Cabinet v. James B. Beam Distilling Co.,* Ky., 798 S.W.2d 134 (1990), provides additional support for this approach when it held that the distilling of whisky was a separate and distinct operation that was not dependent on the bottling or warehouse operations at the same location. Although the principal thrust of the *Beam, supra,* opinion was the one location definition, this Court stated that if Beam sells part of its product, it must be marketable for its intended use without regard to the other operations conducted at another site. *See Beam* at 135.

In addition, the water distribution system is not used directly in manufacturing. *Revenue Cabinet v. Amax Coal Co.,* Ky., 718 S.W.2d 947 (1986), holds that under the integrated plant theory, machinery used in procedures "essential to the total process of manufacturing" are used directly in the manufacturing process. *See Schenley Distillers, Inc. v. Commonwealth, ex rel Luckett,* Ky. 467 S.W.2d 598 (1971).

This case is distinguishable from *Amax, supra,* because the independent water distribution companies and cities can and do distribute water without treating it. These independent water distribution systems deliver the purified water to their customers by means of their own distribution systems. In addition, this case differs from *Amax* because the potable water is sold to water hauling customers without ever entering the water distribution system.

The Public Service Commission and the Natural Resources Cabinet separately regulate and license the water distribution system and water treatment plants. There is no requirement that the water company deliver the water. The license to distribute water is not directly related to a license to treat the water. Consequently, the *Amax* test that tied the mandatory federal and state reclamation requirements for the mining of coal is not satisfied in this situation.

It is important to recognize that water treatment and water distribution are separately regulated and licensed. A company may distribute water and therefore pressurize it without processing it. The pressurization used by the water company to transport the water to customers is not part of the manufacturing process in this case because the water is finished and saleable in the clear well and because the water distribution companies that do not manufacture water, pressurize water to deliver it to their customers.

■ We realize that the Revenue Cabinet has consistently interpreted KRS 139.480(8) so as to refuse a sales and use tax exemption to pipes, valves, fittings and meters for both water distribution systems and local utilities that deliver gas. We find no reason that this policy should differ in regard to water. We further acknowledge that long standing statutory construction of a law by an administrative agency charged with its interpretation should be honored by a reviewing court. *GTE & Subsidiaries v. Revenue Cabinet,* Ky., 889 S.W.2d 788 (1994); *Hagan v. Far-*

*ris*, Ky., 807 S.W.2d 488 (1991); *Allphin v. Joseph E. Seagram & Sons, Inc.*, Ky ., 294 S.W.2d 515 (1956). We find no reason to disturb the interpretation followed by the Revenue Cabinet in such matters.

## II

■ The decision of this Court in *Kentucky Electric Co. v. Buechel*, 146 Ky. 660, 143 S.W. 58 (1912), is still applicable to the type of situation presented here. Neither the Court of Appeals, nor the circuit court, has the authority to declare that decisions of the Supreme Court of Kentucky or its predecessor court have implicitly been overruled because of age. SCR 1.030(8). *Buechel, supra*, considered the definition of manufacturing plant for ad valorem tax purposes and determined that an electric generating plant was a manufacturing plant. The Court specifically refused to include the distribution system as part of the manufacturing plant. The Court noted in pertinent part

> Its poles, conduits, lines, wires, etc., are not used in any way whatever in the manufacture of the electricity, but their use is to dispose of the manufactured product, . . . While they may be necessary to make the business a success, still they are not necessary to manufacture the product. . . .

*Kentucky Electric* at 62.

An even older case, *Covington Gas–Light Co. v. City of Covington*, 84 Ky. 94, 8 K.L.R. 442 (1886), held that a gas manufacturing plant did not include the pipes, meters and lamp posts because if it did, the entire city would be converted into a workshop belonging in part, at least, to this corporation. The reasoning of *Buechel* and *City of Covington, supra*, is still sound in light of the clear intention of the legislature to limit this kind of exemption to items incorporated in a plant facility. KRS 139.480(8) has the same purpose as the ad valorem exemption for manufacturing now found in KRS 132.200(4). *Cf. Commonwealth, ex rel Luckett v. WLEX–TV Inc.*, Ky., 438 S.W.2d 520 (1969).

■ When construing the tax laws, including exemptions therefrom, this Court must give deference to the interpretation of such terms as they are commonly used or understood. The plain meaning of terms such as "distribution system" and "pressurization" means that they are not part of the manufacturing plant process and consequently not exempt from sales and use tax. *Cf. WLEX–TV, Inc., supra; City of Lexington v. Lexington Leader Co.*, 193 Ky. 107, 235 S.W. 31 (1921).

The Kentucky Board of Tax Appeals, in affirming the decision by the Revenue Cabinet to deny tax exemption, relied on the testimony of two witnesses who were employees of the Public Service Commission and the Department of Natural Resources, respectively. Their testimony was that pressurization is used to move the water and that the treatment plants are regulated separately from the distribution system. The water company's literature, published to explain how water purification plants and distribution systems work, refers to the two separately. The Court of Appeals erroneously determined that the manufacturing process continues until the water is transported to an ultimate customer. Such fact finding ignores the reality that the water company has three types of customers who receive water service in three different manners. The Court of Appeals and circuit court decision reach an erroneous result because no additional product, in this case, finished saleable water, is created by adding distribution facilities.

Although it may be the purpose of tax exemptions for machinery in new and expanded industry to make that industry more competitive, such a principle is not applicable here because the water company is a fully regulated monopoly which has no competition.

Thus, we must reverse the Court of Appeals and reinstate the decision of the Board of Tax Appeals that defines the water distribution system as it is common-

ly used in the industry, that is, separate from the manufacturing plant facility.

## III

■ The proper standard for appellate review of findings of fact is whether such findings of fact are supported by substantial evidence. KRS 131.370. *Trimble County Bd. of Supervisors v. Mullikin*, Ky., 438 S.W.2d 524 (1968), states that the legislature intended to limit review of orders of the Board of Tax Appeals on findings of fact, as in most other appeals from orders of administrative agencies, to determining whether the findings of fact are supported by substantial evidence. The opinion cited CR 52.01 and *Board of Education of Ashland School District v. Chattin*, Ky., 376 S.W.2d 693 (1964) and *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission et al.*, Ky., 379 S.W.2d 450 (1964).

In this case, the Board of Tax Appeals found as a fact that the water was sold from clear wells to water haulers. The water company argues that it was selling pressurized water and this altered the nature of the finished product. The Board of Tax Appeals also found that some water is delivered by means of gravity flow and not pressure. There was testimony that the water did not change its character because of the pressurization. The Board of Tax Appeals was within its authority to accept such testimony, even when there was conflicting evidence presented.

One witness testified that the purpose of pressurization was to maintain the purity of the water as well as deliver it. Another witness disputed the water company's argument about kinetic energy being used for the purpose of pressurization. A company witness testified that pressurization was necessary for a proper consumer use. The findings by the Board of Tax Appeals that the pressurization was used primarily to transport the water were supported by substantial evidence.

The circuit court did not find that the determination by the Board of Tax Ap-

peals was not supported by substantial evidence, rather it erroneously construed this as a legal issue and not as a factual one. The circuit court spontaneously took the position that pressurization is a continuation of the manufacturing process. In doing so, the circuit court improperly substituted its own determination of the facts in place of that of the Board of Tax Appeals. The Court of Appeals compounded the error by affirming the decision of the circuit court. We reaffirm the position that a reviewing court may not disturb findings of fact by an administrative agency if those findings of fact are supported by substantial evidence. *Mullikin, supra.*

## IV

■ The Court of Appeals erred when it held that the 1,197 miles long water distribution system was one location and thereby met the statutory requirement for an exemption for energy used in manufacturing. KRS 139.480(3) requires that the energy be used in the course of manufacturing to processing in order to obtain an exemption. The water company's distribution system is not engaged in manufacturing or processing as earlier determined and the distribution system does not constitute a plant facility at one location. Moreover, KRS 139.480(3) requires that the plant facility be a permanent structure affixed to real property at one location. The determination that remote booster pumps scattered over a six county area is one location is not supported by legal authority which can validate such a conclusion.

For the reasons set out above, the decision of the Court of Appeals is reversed and the order of the Board of Tax Appeals denying an exemption to the water distribution system from sales and use tax for machinery used in new and expanded industry is reinstated.

All concur.