**OWENS–ILLINOIS LABELS, INC., Appellant,**

v.

**COMMONWEALTH of Kentucky, Revenue Cabinet; and Kentucky Board of Tax Appeals, Appellees.**

**Owens–Brockway Plastic Products, Inc., Appellant,**

v.

**Commonwealth of Kentucky, Revenue Cabinet; and Kentucky Board of Tax Appeals, Appellees.**

**Johnson Controls Battery Group, Inc., Appellant.**

v.

**David W. Turner, Property Valuation Administrator for Boone County; Commonwealth of Kentucky, Revenue Cabinet; And Kentucky Board of Tax Appeals, Appellees.**

Nos. 1998–CA–002114–MR, 1999–CA–000724–MR and 1999–CA–000734–MR.

Court of Appeals of Kentucky.

May 5, 2000.

Discretionary Review Denied by Supreme Court Oct. 18, 2000.

Stephen D. Berger, Michelle D. Wyrick, Louisville, Robert F. Greene, Florence, for Appellant.

Cathy Cravens Snell, Frankfort, Larry J. Crigler Burlington, for Appellee.

Before: DYCHE, JOHNSON, and TACKETT, Judges.

## OPINION

JOHNSON, Judge.

Before this Court are the consolidated appeals of Owens–Illinois Labels, Inc. from the judgment of the Nelson Circuit Court, and of Owens–Brockway Plastics Products, Inc., and Johnson Controls Battery Group, Inc. from the judgment of the Boone Circuit Court. Each circuit court judgment affirmed the determination of the Board of Tax Appeals that the appellant tax-payer had lost any entitlement to favorable state tax rates and local tax exemptions under KRS [1] 132.020(1) and 132.200(8). Since we have concluded that the lower courts did not err in upholding the Board's rulings, we affirm.

The essential facts and questions of law presented in each of these appeals are identical. All three appellants are corporations which occupy property and conduct business thereon under a lease agreement with the city/owner of the property. In each case, the funding needed for acquiring the site and constructing the industrial buildings on the property was obtained by the city's issuance of industrial revenue bonds (IRB's). The bonds have since been fully repaid and retired. The issue in these appeals is whether the retirement of that debt affects the corporate taxpayers' liability for state *ad valorem* taxes and local property taxes.

The first of the two statutes at issue, KRS 132.020(1), provides for an "annual ad valorem tax for state purposes of thirty-one and one-half cents ($0.315) upon each one hundred dollars ($100) of value of all real property directed to be assessed for taxation." However, the statute provides for a more favorable rate of only one and one-half cents ($0.015), for "all privately-owned leasehold interests in industrial buildings, as defined under KRS 103.200, owned and financed by a tax-exempt governmental unit[.]" The second statute, KRS 132.200, exempts several classes of property from the imposition of local property taxes including, at subsection (8),

> [a]ll privately-owned leasehold interest[s] in industrial buildings, as defined under KRS 103.200, owned and financed by a tax-exempt governmental unit, or tax-exempt statutory authority under the provisions of KRS Chapter 103, except that the rate shall not apply to the proportion of value of the leasehold interest created through any private financing[.]

In these cases, after the IRB's were retired, the appellants were assessed state property taxes without the favorable state rate, and they were sent tax bills for local property taxes.[2] They paid the taxes.

---

1. Kentucky Revised Statutes.

2. Owens–Illinois Labels was sent a 1994 tax bill by the Nelson County Sheriff, showing property with an assessed value of $5,014,-001, and taxes totaling $37,849.26 (state tax of $8,451.60, county tax of $6,977.48, school tax of $21,080.10, and special taxes of $1,320.08). Owens–Illinois paid this amount but sought a refund of $37,112,20, the differ-

ence between the amount due and the amount that would have been due if it had been allowed the exemption for local taxes and the favorable state tax rate of $0.015. Owens–Brockway was mailed a 1994 tax bill by the Boone County Sheriff showing an assessed value of $2,160,000 for its leasehold property and taxes totaling $19,665.07 (state tax of $3,640.99, county tax of $2,815.34, school tax of $9,483.26, and special taxes of $3,725.57).

The appellants' requests for refunds from the Revenue Cabinet for taxes allegedly not owed were denied. After the three taxpayers appealed to the Kentucky Board of Tax Appeals, they moved to have their appeals held in abeyance pending the exhaustion of all appeals in the case styled, *Revenue Cabinet v. American Greetings Corporation*, which was then pending in the Franklin Circuit Court. In that case, the industrial property leased by American Greetings was owned by the City of Danville, and the corporation had used IRB's to finance the building and expansion of the plant. Although the IRB's had been retired and the city's property was no longer indebted, the Board determined that the corporate taxpayer was entitled to continued favorable tax treatment, stating as follows:

> 11. The Board concludes that the industrial building owned by the City and leased to American Greetings is "financed" by the City, a tax-exempt governmental unit, according to KRS 132.020(1), 132.195(2)(a), and 132.200(8). The term "financed" is not defined by KRS Chapter 132; however, the meaning of the term is unambiguous.... In the appeal at bar, the City, a tax-exempt governmental entity, supplied funds through the issuance of industrial revenue bonds pursuant to KRS 103.200–.285 for the acquisition and improvement of the industrial building leased by American Greetings. Therefore, the industrial building is "financed" by the City according to the common and approved usage of that term.

The Revenue Cabinet appealed, and the Franklin Circuit Court reversed the Board and held, as a matter of law, that "[o]nce the debt is paid off, the collateral is no longer financed." The circuit court concluded that American Greetings could no longer enjoy the favorable tax treatment afforded by the statutes. For reasons not apparent of record, American Greetings Corporation did not appeal the adverse decision of the Franklin Circuit Court to this Court.

After the decision was rendered in the Franklin Circuit Court, the Revenue Cabinet moved the Board, in each of the cases *sub judice*, to remove the appeal from its abated status and to dismiss the appeal. Although the Board in the three cases *sub judice* was not bound by the decision of the Franklin Circuit Court, it nevertheless followed the reasoning contained in that opinion and entered decisions in each of the cases adverse to the corporate taxpayer. The appellants then appealed the Board's decision to the circuit court in the counties where their businesses are located as allowed by KRS 131.370.[3]

The Boone Circuit Court consolidated the two appeals in its court. It was admittedly impressed with the decision of the Franklin Circuit Court and adopted much of its reasoning in holding as follows:

> The language of KRS 132.200(8) is clear and unambiguous on its face. The statute clearly states that if the industrial building is "owned *and* financed" by a tax-exempt entity, it will be exempt from local taxes and enjoy a reduced state rate pursuant to KRS 132.020. Once a debt is paid off, the collateral is no longer financed. To say that once a piece of property is financed by an institution or entity it is then always financed by that institution or entity is to disregard common usage of the term.

---

Of the total taxes paid, Owens–Brockway sought a refund of $19,347.55, leaving only $317.52 as owed. The record indicates that the value of Johnson Controls Battery Group's leasehold property was assessed at $3,385,000 for the tax years 1996, and 1997, but the amount of taxes levied and the refund it claims are not contained in the record on appeal.

3. This statute gives any party "aggrieved by any final order of the Kentucky Board of Tax Appeals" the right to appeal to either the Franklin Circuit Court or to the circuit court of the county in which the party "resides or conducts his place of business."

It is clear that the General Assembly intended to allow companies such as Owens[-Brockway] and Johnson Controls to enjoy a lower tax rate while paying off their IRB's. This exemption benefits both the locality and the state in attracting companies to the region; however, this exemption does not provide that because a company signs a twenty year IRB with the City of Florence its property will be subject to a lower tax rate forever [emphasis original].

The Nelson Circuit Court did not find the meaning of "financed" to be so clear. It held that the statutes gave "no indication" of whether the term "financed" was to be "applied in the present [tense], (and thus supportive of the Cabinet's position) or past tense (favoring the corporation's claim)." To resolve the dispute, the Nelson Circuit Court attempted to discern the intent of the drafters of the taxing scheme. The Nelson Circuit Court held:

> [T]he Legislature, in enacting the statutes in question, intended to assist governmental units in the repayment of their bond issués. The ad valorem tax break supplied by said statutes is obviously an enticement to lure private businesses to lease governmental property.
>
> Once the bonds have been repaid, there is no further need to assist the governmental unit. The purpose of the enticement has been satisfied at that point. In other words, it is obvious to this Court that the primary purpose of the tax incentive is to assist governmental units; not the private lessees. Once the onus of the bond issue has been eliminated, the purpose of the lower tax incentive has been erased.

Thus, the Boone and the Nelson Circuit Courts reached the same result adverse to the taxpayers, but for different reasons. It is from these judgments that the taxpayers have appealed to this Court.

The appellants insist that both circuit courts erred in their interpretation of these tax statutes and argue that they are entitled to favorable tax treatment for as long as the property they lease, which was financed with IRB's, is owned by the city. They take specific exception to the Boone Circuit Court's interpretation of the term "financed," to only include land or buildings *currently* encumbered with debt, and with the Nelson Circuit Court's reasoning that the statutes are intended only to assist government units. They argue that

> the word "financed" refers to the source of funds used to construct a building. It means that the industrial building was acquired and constructed with borrowed funds (the Bond proceeds). It makes no reference to whether the borrowed funds have been repaid.... If a city obtains the funds needed to acquire or construct an industrial building through the issuance of industrial revenue bonds under KRS Chapter 103, the industrial building is "financed" with the bond proceeds. The eventual repayment of the borrowed funds does not alter the fact that the industrial building was "financed" with industrial revenue bonds.

In response, the Revenue Cabinet insists that the plain meaning of the "financed" requirement "is that the financial obligations must be outstanding." It contends that several definitions obtained from dictionaries "require active contemporaneous management of funds."

■ In addressing the issue raised by the appellants, we are guided by settled principles of statutory construction. KRS 446.080(4) requires this Court to interpret statutory language with regard to its "common and approved usage." Foremost, it is our duty "to ascertain and give effect to the intent of the General Assembly." [4] In construing a statute, this Court "must consider 'the intended purpose of the statute—the reason and spirit of the statute—and the mischief intended to be

---

4. *Beckham v. Board of Education of Jefferson* *County,* Ky., 873 S.W.2d 575, 577 (1994).

remedied.' " [5] "The policy and purpose of the statute must be considered in determining the meaning of the words used." [6] However, the "plain meaning of a statute cannot be ignored by the courts simply because another interpretation might be considered to state a better policy." [7]

■■■ In addition, we are also guided by rules of construction specific to statutes providing for the imposition of taxes. "When construing the tax laws, including exemptions therefrom, [an appellate court]· must give deference to the interpretation of such terms as they are commonly used or understood." [8] Tax statutes are to be "strictly construed in favor of the taxpayer," however, "in cases of statutory exemptions from taxation, the converse in true." [9] "It is a well-accepted rule of construction that exemptions from taxation are disfavored and that such statutes are to be strictly construed against the taxpayer." [10] Nevertheless, when construing statutes providing tax exemptions "to enhance Kentucky's competitive position in manufacturing," we must "take into consideration the objective of the legislature ... to encourage the location and expansion of industries in Kentucky." [11]

■■ With these principles in mind, we are unable to agree with the conclusion of the Boone Circuit Court that the phrase "owned and financed" means "currently financed, or currently mortgaged or encumbered" property owned by the city. The words "owned and financed," do not

clearly bring to mind temporal parameters, but just as easily suggest, as the appellants argue, the source of title and funds actually used to improve or construct the industrial building forming the subject of the lease. Thus, we find ourselves in agreement with the observation of the Nelson Circuit Court that the meaning of the word "financed" as used in these statutes, to describe industrial buildings subject to a leasehold interest, is susceptible to two, equally reasonable interpretations and is therefore, ambiguous.

However, we part company with that portion of the Nelson Circuit Court's conclusion that the taxing scheme is "primarily" intended to assist the city in paying off its indebtedness. The Nelson Circuit Court was convinced that once the IRB's were paid off, "the purpose of the lower tax incentive has been erased." This interpretation overlooks the fact that the city incurred the debt by issuing the IRB's in the first place to entice its leasee, Owens–Illinois Labels, to move to its community and create jobs. It cannot be questioned that the overall purpose of KRS Chapter 103, (relating to IRB's) and the favorable tax provisions at issue, is to encourage industry to move to Kentucky, secure jobs for our residents, to increase our tax base and to prevent economic stagnation.[12] The mere fact that the debt is paid and the IRB's are retired does not eliminate these underlying purposes for which the bonds were issued and the leas-

5. *Commonwealth v. Kash*, Ky.App., 967 S.W.2d 37, 43 (1997), (citing *City of Louisville v. Helman*, Ky., 253 S.W.2d 598, 600 (1952)).

6. *Kentucky Industries Utility Customers, Inc. v. Kentucky Utilities Co.*, Ky., 983 S.W.2d 493, 500 (1998).

7. *ITT Commercial Finance Corp. v. Madisonville Recapping Co., Inc.*, Ky.App., 793 S.W.2d 849, 852 (1990)(citing *Board of Education of Nelson County v. Lawrence*, Ky., 375 S.W.2d 830 (1963)).

8. *Revenue Cabinet v. Kentucky–American Water Co.*, Ky., 997 S.W.2d 2, 7 (1999).

9. *Revenue Cabinet v. Gaba*, Ky.App., 885 S.W.2d 706, 708 (1994).

10. *Louisville Edible Oil Products, Inc. v. Revenue Cabinet*, Ky.App., 957 S.W.2d 272, 276 (1997). See also *Delta Air Lines, Inc. v. Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985).

11. *Revenue Cabinet v. Armco, Inc.*, Ky.App., 838 S.W.2d 396, 401 (1992)(citing *Schenley Distillers, Inc. v. Commonwealth*, Ky., 467 S.W.2d 598, 601 (1971)(footnote omitted) and *Ross v. Greene & Webb Lumber Co., Inc.*, Ky., 567 S.W.2d 302, 304 (1978)).

12. See KRS 103.210.

es entered into in the first instance. Even though it has retired the IRB's it used to finance the property leased to Owens–Illinois Labels, the City of Bardstown surely wants to retain the industry and the jobs that industry provides.

■ Our research of the history of the tax statutes reveals that prior to 1977, property acquired by a city or county "to be rented or leased to an industrial concern" was exempt from taxation "to the same extent as other public property ... as long as the property [was] owned by the city or county."[13] In 1977, the Supreme Court of Kentucky affirmed the Board's approval of an *ad valorem* tax assessment. of a private lease interest held by a manufacturer. in land upon which the City of Mt. Sterling had issued IRB's to "construct buildings and make improvements."[14] In *Hobart,* the Court held that the lessee of land owned by a tax-exempt lessor, such as a city, must pay *ad valorem* taxes on the fair market value of the leasehold interest, and not just the value of improvements made by the taxpayer with its own funds. In 1978, in direct response to *Hobart,* the General Assembly amended KRS 132.020(1) and 132.200(8) to provide the $0.015 tax rate for state taxes and the exemption for local taxes for privately-owned leasehold interests in industrial buildings. In so doing, it expressed its belief that the *Hobart* decision would "result in the possibility of an exodus of industry from the Commonwealth, as well as the discouragement of new industry coming into this Commonwealth."[15] Contrary to the Nelson Circuit Court's reasoning, the Legislature's stated purpose in enacting these tax amendments in 1978 was not to help local governments pay off their debts, but to keep industry in, and attract industry to, the state.

While we reject *in toto* the reasoning of the Boone Circuit Court and find the opinion of the Nelson Circuit Court to be flawed with respect to the issue of the Legislature's intent, in the final analysis, we hold that the result reached by those two courts must be affirmed. It is obvious to this Court that the Legislature's intent in passing the statutes was to address the potential loss of industry and jobs as a result of the decision of the Supreme Court in *Hobart* upholding an *ad valorem* tax on the leaseholds, a tax not contemplated by the Legislature in creating its scheme authorizing the issuance of IRB's for constructing industrial buildings.

Yet, it is not clear that the Legislature intended for the taxpayers to benefit from the favorable state tax rate and exemption from local taxation indefinitely. It appears to us that the Legislature may have intended the term "financed" to mean "currently financed," as presumably after the IRB's are paid off the governmental owner of the property, if it desired, could afford to either sell the property to the taxpayer, or adjust the lease payments to off-set the higher taxes that the taxpayer would owe. Arguably, since the taxpayer in *Hobart* had an option to purchase the land and the improvements at the conclusion of the original lease, the Legislature was not concerned with providing incentives to entice the taxpayer to remain after the expiration of the original lease term at which time the building would no longer be "financed."[16] Or, conceivably, the Legislature did intend to bestow tax breaks for as long as the governmental unit retains ownership of the property upon which improvements were once financed with IRB's in order to prevent loss of jobs and economic decline. Simply, we are unable from our examination of the statutes to discern a clear intent one way or the other. Thus, since the nature of the statutes is to provide partial or total tax exemptions, the

13. KRS 103.285.

14. *Kentucky, Department of Revenue v. Hobart Manufacturing Co.,* Ky., 549 S.W.2d 297, 298 (1977).

15. 1978 Ky. Acts. 404, § 4.

16. 549 S.W.2d at 298. *See also, e.g., White v. City of Hickman,* Ky., 415 S.W.2d 379 (1967).

ambiguous term, "financed" must be construed against the appellants/taxpayers and in favor of the taxing authority.

Since we hold that the statutes are ambiguous and must be construed against the appellants, we do not need to address the various other arguments advanced by the Revenue Cabinet in support of the judgments.

Accordingly, the judgments of the Nelson Circuit Court and the Boone Circuit Court are affirmed.

TACKETT, Judge, concurs.

DYCHE, Judge, concurs in result and files separate opinion.

DYCHE, Judge, concurring in result.

I concur with the result reached by the majority. I find the term "financed", as used in the statute, to be clear and unambiguous, requiring *current, unretired financing* to be in place in order for the property to be eligible for the favorable tax treatment.