COVINGTON GAS LIGHT CO. *v.* CITY OF COVINGTON.

[Abstract Kentucky Law Reporter, Vol. 7—763.]

**Taxables Under Covington Charter.**

Under the provisions of the charter of the city of Covington, authorizing such city to levy taxes and providing that "raw materials held by manufactories for the purpose of being manufactured in the city, machinery in manufactories, etc., shall be exempt from taxation," it is held that the Covington Gas Light Company may be properly taxed on its pipe line, gas lamp posts and meters, such property not being a part of the machinery in the gas plant and factory.

**Collection of City Taxes.**

While the property of a corporation in the city of Covington not used for or essential to supplying the wants of the city and its inhabitants may be seized and sold for taxes, a gas works proper and the pipes, lamp posts and meters must be regarded as an entirety, and no portion of it can be taken and sold where the effect

would be to destroy the public use or deprive the public of the benefits to be derived from it. In such a case the chancellor in a proper proceeding can require the company to pay taxes into court, and may place the company in the hands of a receiver.

APPEAL FROM KENTON CHANCERY COURT.

April 24, 1886.

OPINION BY JUDGE PRYOR:

This is an action by the Covington Gas Light Co. against the city of Covington enjoining the collection of certain tax bills against that company, on the ground that the property assessed is exempt from the payment of taxes, and if not that the officer had no power to distrain the goods of the .appellant for the taxes unpaid. Section 1 of "the act to amend the charter of the city of Covington," approved April 9, 1873, empowering the council to levy taxes, etc., provides "that churches, schoolhouses, colleges and the grounds attached thereto, and dedicated solely for the use thereof, cemeteries, raw materials held by manufactories for the purpose of being manufactured in the city, machinery in manufactories, etc., shall be exempt from taxation."

The gas company owns real estate upon which has been erected several buildings used for the purpose of manufacturing gas, with all the machinery and appliances attached for that purpose, and on this real estate, except the machinery, etc., the company has paid the taxes. The question involved in this case, the one at least of the greatest importance, is as to what constitutes the machinery for manufacturing gas or the machinery in a manufactory. It is insisted and was so adjudged by the court below that the pipes leading from the realty or factory of the appellant, by which when the gas was made it was conveyed to various parts of the city for the use of the inhabitants, was not a part of the machinery of a gas manufactory, nor were the lamp posts and meters embraced by the word machinery.

It is true that the pipes, lamp posts, etc., belonged to the gas company, and in one sense were attached to or a part of the main works and are necessary to enable the company to perform its contract with the city and supply a public necessity. The right to lay down its pipes and to use the streets of the city for that pur-

pose has been expressly granted under legislative authority; but with the pipes taken from the streets or the meters and lamp posts removed, the manufacture of gas could still be carried on, not with much profit, however, unless the city furnished its own pipes, meters and lamp posts. The means of carrying the gas through the city is for the purpose of furnishing it to consumers and not manufacturing it. The street railway is a franchise on the surface of the ground granted for the transportation of passengers; and the track that runs from its machine shops or that of a steam railway might as well be said to constitute part of the machinery of the company as to hold that the franchise or pipes under the surface of the street to enable the gas to be furnished in any part of the city after being manufactured was a part of the company's machinery in its factory. Each company owns its franchise, but to adjudge that its pipes are a part of the machinery in the factory, bringing it within the clause of the charter exempting it from taxation, would at best be a strained construction of the statute and relieve the company of a share of the public burden, that other companies as well as natural persons, equally as meritorious and with less profitable investments, would be compelled to bear. The entire city of Covington would be converted into a workshop belonging in part at least to this corporation if its pipes, lamp posts and meters are to be held as machinery within its manufacturing establishment.

The tanks as well as all the machinery on the realty belonging to the company and used for the purpose of making the gas were properly exempt from taxation under the charter of the city; but the pipes, lamp posts, meters and real or personal estate were the subject of taxation and not within the exemption. That the city may have failed to tax this property for years when making its assessments can work no estoppel. Its neglect or want of diligence in ascertaining what property was liable for taxation can only affect the right of recovery when the statute of limitations operates as a bar, but no further; and if real or personal estate, the amount of levy being the same, no necessity exists for determining to which class of property it belongs.

A further provision of § 1 of the amended charter authorizes the levy "of an ad valorem tax on the real estate in the city, and on such personal estate, choses in action and moneys within the city

or belonging to the inhabitants thereof as said city council may designate, and as now are or from time to time may be taxable by the laws of this commonwealth," etc. It is argued that, because this particular kind of property was not designated by the council as being subject to the payment of the tax, therefore it was improperly assessed.

The designation made by the council in the year 1883 was real estate, personal estate, debts, bills, bonds, etc., together with any property of any kind subject to taxation under the laws of this commonwealth, and the same designation was made for the years 1881 and 1882, perhaps not quite so specific in its character. Either was sufficiently descriptive and gave to the assessor full power to assess all the property owned by the inhabitants of the city or located within the city for the purposes of taxation, and to require the council to point out or name every species of property so as to distinguish it from other property would be unreasonable, unless it could be assumed that the council or its members had taken an inventory of all the distinct kinds of property in the city. Such was not the meaning or purpose of the act, and why it was so worded is difficult to perceive unless to make the law like all other tax laws, more difficult of construction or of administering than other general law.

This brings us to the consideration of another provision of the charter affecting the remedy for the collection of taxes when unpaid. The collector of taxes is required to make out a delinquent list by the provisions of the Act of 1850, Art 5, § 3, and return it under oath to the council, and this must be done after the 12th of July and before the 1st Monday in August; and § 5 of the same article provides "that it shall be lawful for the council to place the delinquent lists or tax bills, from time to time, in the hands of the collector until they shall be collected, and the right of distress shall remain, if the same lists or tax bills are sent out at least once in each year; and the collector shall be liable for failing to collect and account for delinquent lists or bills in like manner as for original tax bills placed in his hands." There is no reason for such a provision as this in the charter unless the object is to require a return of the tax bills by the collector, and then to restore their efficacy they must be sent out at least once a year by the council. Instead of making the right of distress exist for one, two, three

or five years, or as long as the taxes remain uncollected, it was thought proper to insert this provision that has the effect to confuse the provisions of the statute, and make that doubtful which should be and was susceptible of being made plain and easily understood. Exoneration from taxes arises from the multiplied and ambiguous statutes on the subject, and those unwilling to assume their share of the burden easily escape payment. The language of this section can not be misunderstood and the right of distress is good except as to the period within which it may be adopted by reason of this plain provision of the statute.

This, however, is not a statute of limitations; the taxes may be collected by a suit in equity, and this is in fact the proper mode of enforcing the payment of such taxes, and particularly when by an express provision of the law applicable to the city of Covington such jurisdiction is conferred upon the chancellor. The property of the corporation not used for or essential to supplying the wants of the city and its inhabitants may be seized and sold for taxes, but the gas works proper, and the pipes, lamp posts and meters through which the entire city is furnished with light, must be in this particular regarded as an entirety, and no portion of it can be taken and sold where the effect will be to destroy the public use or deprive the public of the benefits to be derived from it. The wants of the public require and demand that this franchise, although granted to a private corporation, shall be devoted to the public use. The chancellor in a proper proceeding can require the company through its chief officers to pay taxes into court and place the property in the hands of a receiver for that purpose. *Louisville Water Works v. Hamilton,* 81 Ky. 517, 5 Ky. L. 557.

The property seized by the officer in this case, consisting of the office furniture, and indispensable, as is alleged, for the proper execution of the contract with the city, should not have been ordered sold but the relief adopted as already indicated. The fact that the city would have been compelled to construct gas works, and if constructed the works would have been exempt from taxation, or that the city has reserved the right to purchase the works from the company, or that the company furnishes gas to the city for a less price than to private consumers, affords no reason for exempting this property from taxation. The chancellor, as we construe the judgment below, only perpetuated the injunction as to the remedy by

distress, which is not final, but did perpetuate the injunction as to the attempt to collect taxes on the tanks, which is final. He has only said as to the tax bills not returned to the collector of the council within the year that the remedy by distress was improper.

It follows therefore that the pipes, posts and meters are liable to taxation, whether considered as real or personal estate; but it also follows that the remedy for a distress is improper when the seizure of the property of the corporation will destroy the public use; and for that reason the judgment below is reversed with directions to restrain the city from selling the property levied on, so framing the judgment as to show that the remedy adopted is alone withheld, leaving the city to proceed, if it sees proper, in some other mode for enforcing payment. In all other respects we concur with the views expressed in the judgment appealed from.

The case is remanded for proceedings consistent with this opinion, *reversed* on original and *affirmed* on cross-appeal.

*J. F. & C. H. Fiske, for appellant.*

*W. K. Benton, for appellee.*