No. 92,379

In the Matter of the Appeal of Western Resources, Inc./ Kansas Gas & Electric Company, from an Order of the Division of Taxation on Denial of Sales and Use Tax Refund Claim

(132 P.3d 950)

Opinion filed April 28, 2006.

*S. Lucky DeFries*, of Coffman, DeFries & Nothern, of Topeka, argued the cause, and *Jeffrey A. Wietharn*, of the same firm, was with him on the briefs for appellant/cross-appellee Western Resources, Inc./Kansas Gas & Electric Co.

*David J. Dunlap*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the briefs for appellee/cross-appellant Kansas Department of Revenue.

The opinion was delivered by

LUCKERT, J.: In this sales and compensating use tax exemption case, the Board of Tax Appeals (BOTA) ruled that Western Resources, Inc./Kansas Gas & Electric Company (Taxpayer) was entitled to a refund of $2,676,245.51 for sales and compensating use tax paid on purchases of machinery and equipment used for manufacturing, processing, and distributing electricity for resale. The Taxpayer appeals that portion of BOTA's order ruling that, pursuant to K.S.A. 2005 Supp. 79-3609(e), the refund should be paid in equal annual installments over 10 years with no interest accruing. The Kansas Department of Revenue (KDR) cross-appeals BOTA's decision that the purchases were exempt under K.S.A. 79-3606(kk).

The Taxpayer, an electric utility business, sought a refund of sales and compensating use tax paid on the purchase of machinery and equipment it claimed was exempt under K.S.A. 79-3606(kk). The Taxpayer's machinery and equipment included such items as transformers, substations, lines, poles, and related items, none of which were located within the immediate boundaries of the Taxpayer's generation plant. Some power plant equipment was also included in the Taxpayer's claim; the KDR concedes that this portion of the claim qualified for tax exemption and, at oral argument, indicated this portion of the claim had settled.

The KDR denied the requested refund on machinery and equipment which was not located within the immediate boundaries of the Taxpayer's generation plant on the ground that the machinery and equipment, which was used to distribute electricity from the generation plant to the customer, was not located at the plant as required by K.S.A. 79-3606(kk). The Taxpayer timely appealed to BOTA.

BOTA found that "electricity generation occurring at the Taxpayer's generation plant is only the first step in the process of manufacturing electricity." The electricity continues to be manufac-

tured and processed by machinery and equipment outside the generation plant and is not in usable form until the manufacturing process is completed just before the customer's metering device, "which is when the electricity is at the voltage and quality suitable for use by the ultimate consumer." BOTA also found that, "[a]lthough some of the subject equipment serves a distribution function, it is also manufacturing and processing equipment required to convert the electrical energy into a form useable by the ultimate consumers" and "[a]ll of the subject equipment, including the lines and poles, is necessary to produce and process the electrical energy."

BOTA concluded that the Taxpayer's machinery and equipment was "used directly and primarily for the purposes of manufacturing, assembling, processing, finishing, or distributing tangible personal property (electricity) for resale," thus the Taxpayer's purchases of that machinery and equipment were exempt from taxation under K.S.A. 79-3606(kk). Accordingly, BOTA granted the Taxpayer's refund claim in the total amount of $2,676,245.51. In an Order on Limited Reconsideration, BOTA found that K.S.A. 2005 Supp. 79-3609(e)(1)(B) was applicable and that, to the extent each of the Taxpayer's individual vendor refund claims exceeded $50,000, such refunds should be paid in equal installments over a 10-year period and without interest.

The Taxpayer and the KDR each filed a timely notice of appeal on the same day. The KDR's appeal has been labeled as a cross-appeal. The case was transferred to this court on the court's own motion pursuant to K.S.A. 20-3018(c).

## ANALYSIS

We begin our analysis with the fundamental issue underlying this case: Did BOTA erroneously interpret K.S.A. 79-3606(kk) when it ruled that the Taxpayer's purchases of machinery and equipment qualified for the tax exemption?

### Standard of Review

BOTA orders are subject to review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A.

77-601 *et seq*. *In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694, 101 P.3d 1239 (2004). K.S.A. 77-621 sets out the scope and standard of review and provides in relevant part that a court may grant relief if it determines "the agency has erroneously interpreted or applied the law"or "the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c)(4) and (c)(8).

This court normally gives deference to BOTA's decisions:

" 'BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. [Citation omitted.] However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. [Citation omitted.]' " *Sprint*, 278 Kan. at 694-95 (quoting *In re Tax Appeal of Colorado Interstate Gas Co.*, 276 Kan. 672, 682-83, 79 P.3d 770 [2003]).

### *Interpretation of K.S.A. 79-3606(kk)*

The KDR makes several arguments in support of its general contention that BOTA erroneously interpreted K.S.A. 79-3606(kk) in determining that the Taxpayer's purchases of machinery and equipment qualified for the tax exemption. Most importantly, the KDR contends that BOTA misinterpreted K.S.A. 79-3606(kk) by failing to recognize that the statute only exempts purchases of machinery and equipment which are located at the taxpayer's plant or facility.

Resolution of the argument will require interpretation of the provisions of K.S.A. 79-3606(kk). While statutes imposing a tax must be interpreted strictly in favor of the taxpayer, tax exemption statutes must be interpreted " 'strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. [Citation omitted.]' " *Sprint*, 278 Kan. at 695 (quoting *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 [2003]).

The statute at issue, K.S.A. 79-3606(kk), during the time period at issue in this case, August 1996 to September 1999, provided a tax exemption for

"all sales of machinery and equipment used directly and primarily for the purposes of manufacturing, assembling, processing, finishing, storing, warehousing or distributing articles of tangible personal property in this state intended for resale by a manufacturing or processing plant or facility or a storage, warehousing or distribution facility:

"(1) For purposes of this subsection, machinery and equipment shall be deemed to be used directly and primarily in the manufacture, assemblage, processing, finishing, storing, warehousing or distributing of tangible personal property where such machinery and equipment is used during a manufacturing, assembling, processing or finishing, storing, warehousing or distributing operation:

(A) To effect a direct and immediate physical change upon the tangible personal property;

. . . .

(D) to transport, convey or handle such property during the manufacturing, processing, storing, warehousing or distribution operation at the plant or facility;

. . .

. . . .

"(3) 'Machinery and equipment used directly and primarily' shall not include:

. . . .

(C) transportation equipment not used in the manufacturing, assembling, processing, furnishing, storing, warehousing or distributing process at the plant or facility."

The first paragraph of the statutory exemption setting out the general requirements by which sales of manufacturing machinery and equipment may qualify for exemption from sales and use tax, can be divided into two requirements. To qualify for the exemption, the machinery and equipment must be (1) used directly and primarily for one of the listed purposes, and (2) used by one of the listed plants or facilities. Regarding the first requirement, BOTA concluded "that the subject equipment is used directly and primarily for the purposes of manufacturing, assembling, processing, finishing, or distributing tangible personal property (electricity) for resale." In reaching its conclusion, BOTA cited *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 891 P.2d 422 (1995); *In re Appeal of Water Dist. No. 1 of Johnson County*, 26 Kan. App. 2d 371, 988 P.2d 267, *rev. denied* 268 Kan. 886 (1999); and *Northern States Power Co. v. Commissioner of Revenue*, 571 N.W.2d 573 (Minn. 1997). Although the KDR makes some arguments regarding this requirement and the application of these cases to the determination of whether the equipment is used di-

rectly and primarily in the manufacturing of tangible personal property within the meaning of this statute, we need not resolve those issues in this appeal. The parties' focus and, likewise, ours is upon the second requirement that the equipment be used by one of the listed plants or facilities.

In framing the issue it had to decide, BOTA incorrectly stated this second requirement as being "whether the machinery and equipment is used by the *Taxpayer*" instead of using the statutory language which requires the equipment be used by one of the listed *plants or facilities*. This modification of the statutory language is significant in light of the KDR's contention that manufacturing machinery and equipment must be located at a plant or facility in order to be used by the plant or facility and qualify for tax exemption. The KDR argues that by failing to focus upon the requirement, BOTA violated basic rules of statutory interpretation, including the fundamental rule to which all other rules are subordinate which is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State v. Marsh,* 278 Kan. 520, Syl. ¶ 18, 102 P.3d 445 (2004).

Applying this rule, the statute must be applied as written because " '[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.' [Citation omitted.]" *Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 88, 106 P.3d 492 (2005). Clearly, the language of the statute does not focus upon use by the taxpayer, the focus stated by BOTA. The language used by the legislature in K.S.A. 79-3606(kk)(1)(A) restricts the exempt purchase to that of equipment "used by the plant." Thus, BOTA's application of K.S.A. 79-3606(kk) was contrary to its plain and unambiguous language and was, therefore, erroneous.

The question remains, however, whether this made a difference in the final determination of the exemption. The KDR argues it does. In part, it argues the plant should be considered the immediate boundaries of the electrical generating station. Additionally,

KDR argues, even though the language of the statute does not specify in the first paragraph that the equipment must be "at the plant," such an interpretation is the natural interpretation based upon the plain language of the provision. "Ordinary words are to be given their ordinary meaning." *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001). The ordinary meaning of the terms "plant or facility" is the land, building, or factory at which manufacturing operations take place and implies a physical location having finite boundaries. A plant, unlike the Taxpayer, does not have a physical or corporate existence outside its own physical boundaries.

That said, what is the physical location of the plant? KDR cites various definitions of the terms "plant" and "facility" from other Kansas statutes, dictionaries, and cases and statutes from other jurisdictions as examples to illustrate that electrical lines, transformers, and similar equipment are not part of the generation plant or facility. One case is illustrative. In *Revenue Cabinet v. Kentucky-American Water Co.*, 997 S.W.2d 2 (Ky. 1999), a water company sought sales and use tax exemptions for a new 1,197-mile-long water distribution system from its plant to its consumers. To qualify for the exemption, the Kentucky statute required the machinery to be used directly in a manufacturing or processing production process and to be "installed in a plant facility." 997 S.W.2d at 5.

The Kentucky Supreme Court ruled that the water distribution system was not used directly in manufacturing because pressurization was used primarily to transport the water and was not a continuation of the manufacturing process. 997 S.W.2d at 6. The court found the reasoning of an 1886 case to be persuasive: *"Covington Gas-Light Co. v. City of Covington*, 84 Ky. 94, 8 K.L.R. 442 (Ky. App. 1886), held that a gas manufacturing plant did not include the pipes, meters and lamp posts because if it did, the entire city would be converted into a workshop belonging in part, at least, to this corporation." 997 S.W.2d at 7.

The KDR contends that, just like the *Covington Gas-Light* case, the Taxpayer's argument would convert its entire service area, which includes private property on which the Taxpayer has ease-

ments, into a giant workshop (or a giant plant or facility covering half the state) belonging to the Taxpayer.

We agree that it is not a reasonable interpretation of the terms "plant" or "facility" to extend the physical boundary of the generating plant along the easements used for electrical lines. In the context of electricity generation, the ordinary meaning of the terms "plant or facility" implies the electrical generating plant itself and not transformers, substations, lines, and poles which are located outside the boundaries of the generating plant and which may be located many miles away from the plant and on land where the utility has only an easement.

The interpretation that "plant" and "facility" refer to the generating plant was applied by BOTA when, in making many of its findings, it distinguished between the manufacturing occurring at the plant and outside the plant. For example, BOTA found: "The electricity is processed by the subject equipment *outside the generation plant* and would not be in a usable form without additional processing by the subject equipment." (Emphasis added.) Additionally, BOTA found "manufacturing and processing occurs *both at the generation plant and throughout* the subject equipment up to the metering device after the last transformer, which is when the electricity is at the voltage and quality suitable for use by the ultimate consumer." BOTA referred to the subject equipment only in those or similar terms; it did not identify the equipment as a "plant" or "facility."

Furthermore, although the first portion of K.S.A. 79-3606(kk) refers to equipment used *by* the plant, when the entire provision is considered, it is clear that the legislature intended the property to be used *at* the plant. See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003) (several provisions, *in pari materia*, must be interpreted "together with a view of reconciling and bringing them into workable harmony if possible"). The only place in K.S.A. 79-3606(kk) where the legislature used the phrase "at the plant" is in K.S.A. 79-3606(kk)(1)(D) and (3)(C), which relate to equipment used to transport, convey, or handle property. K.S.A. 79-3606(kk)(1) lists functions which will be "deemed to be used directly and primarily

in the manufacture, assemblage, processing, finishing, storing, warehousing or distributing of tangible personal property." The functions include effecting a change to material, guiding, testing, measuring, transporting, distributing, and packaging as more fully defined in K.S.A. 79-3606(kk)(1)(A)-(E). Of these functions, the only ones which would typically occur away from the plant or facility are transportation and distribution. In K.S.A. 79-3606(kk)(1)(D) and (3)(C), the legislature specifically limited the exemption to transportation and distribution equipment used "at the plant or facility" and, by explicitly limiting the exemption to equipment used at the plant to perform those functions which would likely occur away from the plant, stated its intent that only equipment located at the plant would qualify.

There still remains the possibility that the lines, transformers, poles, and other equipment could be considered self-contained plants because the manufacturing process continues until it reaches the consumer. This interpretation was rejected by the Court of Appeals in an analogous case, *In re Tax Appeal of Geiger Ready Mix Co.*, 25 Kan. App. 2d 101, 958 P.2d 41 (1998). In *Geiger*, the Court of Appeals considered whether the taxpayer's purchase of ready-mix concrete trucks used to mix and transport concrete was exempt under K.S.A. 79-3606(kk). BOTA concluded the cement trucks were used in the manufacturing process pursuant to K.S.A. 79-3606(kk)(1)(A) because they physically changed the concrete components but denied the exemption because the manufacturing occurred " 'somewhere other than at the plant or facility.' " 25 Kan. App. 2d at 103. BOTA rejected the argument that ready-mix concrete trucks were self-contained plants or facilities, stating:

" '[T]he words "plant" and "facility" are words of common usage. Yet, as those words are used in the statute, mobile trucks do not come to mind. The Board agrees with the Department that the natural and ordinary meaning of these words is the land, building or factory at which manufacturing operations take place.' " 25 Kan. App. 2d at 104.

On appeal of that determination, the Court of Appeals affirmed BOTA. 25 Kan. App. 2d at 103. In doing so, the Court of Appeals reconciled the provisions of K.S.A. 79-3606(kk) by holding that "if the manufacturing process takes place at a location other than the

plant or facility, then such machinery and equipment is not exempt from sales tax" and "only transportation equipment that is used at the plant or facility during the manufacturing process is exempt from taxation." 25 Kan. App. 2d at 103.

The Taxpayer argues that *Geiger* is distinguishable because the sole issue before the *Geiger* court was whether transportation equipment qualified for the exemption under K.S.A. 79-3606(kk)(3)(C). The Taxpayer argues that even under the KDR's definitions the machinery and equipment at issue in this case constitute part of the Taxpayer's plant or facility because they are used in the manufacturing and distribution process. In making this argument, the Taxpayer focuses on the second part of the *Geiger* holding but ignores the first. The concrete trucks at issue in *Geiger* were certainly transportation equipment, but they were also used in the manufacturing process itself. With regard to their manufacturing function, the *Geiger* court held that because the manufacturing process took place at a location other than the plant or facility, the trucks did not qualify for the exemption. 25 Kan. App. 2d at 103.

We agree. K.S.A. 79-3606(kk) must be interpreted strictly because it is a tax exemption statute and, under such an interpretation, if the manufacturing process takes place at a location other than the plant or facility, the sale of machinery and equipment which perform that process is not exempt from sales tax. In this case, the transformers, substations, lines, and poles which are located outside the boundaries of the electricity generation plant itself do not fall within the common meaning of the term "plant or facility."

BOTA erroneously interpreted K.S.A. 79-3606(kk). The Taxpayer's equipment does not qualify for exemption.

Because we determine that BOTA erroneously interpreted the provision and the equipment did not qualify for the exemption, there will be no refund of the taxes which have been paid by the Taxpayer and, therefore, we need not reach the remaining issues on the cross-appeal which relate to BOTA's interpretation of K.S.A.

2005 Supp. 79-3609(e) nor the issues on Taxpayer's appeal which relate to the constitutionality of K.S.A. 2005 Supp. 79-3609(e).

Reversed.