No. 102,852

IN THE MATTER OF THE APPEAL OF LAFARGE MIDWEST/MARTIN
TRACTOR CO., INC., FROM AN ORDER OF THE DIVISION OF
TAXATION ON ASSESSMENT OF SALES TAX.

(271 P.3d 732)

Opinion filed March 2, 2012.

*Alice Leslie Rawlings*, of Kansas Department of Revenue, argued the cause and was on the briefs for appellant Kansas Department of Revenue.

*Gerald N. Capps*, of Wichita, argued the cause and was on the brief for appellee LaFarge Midwest.

The opinion of the court was delivered by

JOHNSON, J.: LaFarge Corporation (LaFarge) operates a Portland cement manufacturing facility on a tract of private property it owns in Fredonia, Kansas. The tract includes a contiguous limestone quarry on one side at which LaFarge uses its Caterpillar equipment to load the raw material and haul it across the property to the hammermills that perform the initial step in the cement manufacturing process. LaFarge paid sales taxes to Martin Tractor Company on the purchase of repair parts for its loaders and haulers, but then unsuccessfully sought a refund of the sales taxes from the Kansas Department of Revenue (KDR). Ultimately, the Court of Tax Appeals (COTA) determined that the equipment, and therefore the repair parts, is exempt under K.S.A. 2010 Supp. 79-3606(kk)(2)(D) as being an integral or essential part of the integrated production operation of the cement manufacturing facility. We agree that the equipment is being primarily used in the cement manufacturing business and at the manufacturing facility. Accordingly, we affirm COTA's refund of sales taxes.

## FACTUAL AND PROCEDURAL OVERVIEW

In the first step of the cement manufacturing operation, controlled explosions are used to blast limestone rock and other raw materials from the face of the quarry situated on one side of

LaFarge's tract. The blasting is performed by a third party. The question of the use or taxability of the third party's equipment is not an issue in this appeal.

At the quarry, LaFarge uses its own Caterpillar loaders to scoop up and place the loose limestone rock onto LaFarge-owned Caterpillar haulers. The haulers then transport the limestone over internal haul roads on LaFarge's tract of private property (tract) to another contiguous area of the tract where the processing buildings and equipment—such as hammermills, crushers, and kilns—are located.

At some point after arriving at the processing site, the limestone is loaded into a hammermill to commence the process of transforming the raw material into Portland cement. While a description of the processes involved in that transformation is interesting, it is unnecessary to our decision in this case. We are concerned solely with the raw limestone loading and hauling operations, which are performed entirely upon LaFarge's tract, *i.e.*, the subject equipment does not leave LaFarge's private property. The loaders are situated and operated on the portion of the tract that encompasses the quarry; the haulers travel between the quarry and the hammermills. None of the equipment is registered for highway use.

Sometime after July 1, 2000, LaFarge purchased repair parts for its loaders and haulers from Martin Tractor Company. In conjunction with those purchases, LaFarge paid sales taxes totaling $16,217.05. LaFarge filed for a refund of those sales taxes, claiming the repair parts were exempt from such taxation under K.S.A. 2010 Supp. 79-3606(kk)(1)(C).

The KDR denied the claim, and LaFarge appealed to the COTA. KDR filed a motion for summary judgment with COTA, which in its order denying summary judgment stated that KDR's argument could be distilled as follows:

"1. LaFarge engages in two distinct business operations on its property. The first is a limestone excavation operation, which is conducted in and around the quarry. The second is a cement manufacturing operation, which begins with the crushing activities performed at the hammermill machines.

"2. K.S.A. 79-3606(kk)(1)(C) exempts sales of parts for machinery and equipment only if the machinery and equipment is used as an integral or essential part

of an integrated production operation by a manufacturing or processing plant or facility.

"3. The LaFarge manufacturing plant operations begin at the hammermill machines because that is where the raw materials extracted from the quarry are [first] crushed or otherwise processed.

"4. The loaders and haulers are used in the quarry operation. They are not used primarily in the manufacturing operation at the plant.

"5. Therefore, neither the loaders nor the haulers, nor their repair and replacement parts, are exempt from sales tax because the machinery and equipment is not used as part of an integrated production operation by a manufacturing or processing plant or facility, as required by K.S.A. 79-3606(kk)(1)(A)."

COTA found that "[t]he deficiency in [KDR's] line of argument is revealed upon careful examination of the relevant statutory provisions within the context of the overall legislative scheme expressed throughout K.S.A. 79-3606(kk)." Specifically, COTA found that KDR had failed to show that the loaders and haulers were not used as part of an integrated production operation and had failed to show that the machinery was not being used at the physical location of the manufacturing or processing plant or facility. Accordingly, COTA denied KDR's motion for summary judgment. Although the order noted that LaFarge's attorney had obliquely suggested that the court could enter summary judgment in favor of LaFarge based on the evidence in the record, COTA declined to do so.

Both parties filed a motion for reconsideration, and COTA granted the motions. After reconsideration, a majority of the court modified its prior order to grant complete summary judgment in favor of LaFarge. A dissenting judge opined that the case was not ripe for summary judgment in favor of LaFarge, albeit that judge observed that she "cannot imagine just what information could be elicited by [KDR] on cross-examination that would convince this court that the equipment in question is not part of the manufacturing process." KDR appealed COTA's decision, claiming that it did not correctly, and strictly, construe the exemption provisions of K.S.A. 79-3606(kk).

STATUTORY SALES TAX EXEMPTION

Article 36 of Chapter 79 of the Kansas Statutes Annotated con-

tains the Kansas Retailers' Sales Tax Act. K.S.A. 2010 Supp. 79-3606 sets forth those sales that are exempt from the Act, *i.e.*, the transactions on which a sales tax is not imposed. Subsection (kk) addresses sales of and repairs on machinery and equipment used by a manufacturing or processing plant or facility. K.S.A. 2010 Supp. 79-3606(kk)(1). The question presented is whether COTA erred in determining that LaFarge's loaders and haulers are being used by, and at, its cement manufacturing facility.

*Standard of Review*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, defines the scope of judicial review of state agency actions unless the agency is specifically exempted by statute. K.S.A. 2010 Supp. 77-603(a); *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 906, 249 P.3d 434 (2011). COTA orders are subject to KJRA review. K.S.A. 2010 Supp. 74-2426(c).

Under the KJRA, "[t]he burden of proving the invalidity of agency action is on the party asserting invalidity," and the reviewing court will grant relief if it determines that "the agency has erroneously interpreted or applied the law." K.S.A. 2010 Supp. 77-621(a)(1), (c)(4). The applicable law in this case is set forth in K.S.A. 2010 Supp. 79-3606(kk), and our interpretation of that statute is a question of law over which we exercise unlimited review. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

Further, KDR specifically stated in its brief that it "does not contest the COTA's determination that the material facts are undisputed and that the issue was ripe for summary judgment." Accordingly, the appellate review of COTA's order granting summary judgment is de novo. See *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

*Analysis*

We begin by quickly disposing with some of KDR's arguments. In its original order denying KDR's summary judgment motion, COTA stated that it found "further support for our conclusions in various cases decided in other jurisdictions which have, like Kansas,

adopted the 'integrated plant theory.' " KDR complains that the cases upon which COTA relied pre-dated the 2000 amendments to K.S.A. 79-3606(kk). See L. 2000, ch. 123, sec. 1. KDR contends that the 2000 statutory amendments were intended to replace or supplant the common-law application of the integrated plant theory. Therefore, KDR argues COTA erred in deciding the case based on integrated plant theory common law rather than on an application of Kansas' new statutory scheme. The argument is without legal or factual support.

As the COTA order disclosed in a footnote, KDR's own general counsel, at a legislative hearing in 2000, testified that the proposed amendments were intended to move Kansas from a state that employs some characteristics of the integrated plant theory to a pure integrated plant theory state. See Minutes of the Senate Assessment and Taxation Committee, March 22, 2000. For KDR to now argue that the 2000 amendments were intended to repeal or replace the common-law integrated plant theory is contradictory, if not disingenuous. More importantly, however, COTA clearly decided the matter based upon the current statutory scheme, citing to specific provisions and looking to caselaw merely to corroborate or support its statutory interpretation. Likewise, we will find our resolution in the statutory provisions.

Also, KDR urges us to apply the doctrine of operative construction to affirm its interpretation of the exemption statute. Citing to older cases, KDR claims entitlement to a great deal of judicial deference because it is charged with the enforcement of the Kansas Retailers' Sales Tax Act. See, *e.g., Blue v. McBride*, 252 Kan. 894, Syl. ¶ 7, 850 P.2d 852 (1993). KDR does not explain why COTA, which is charged with interpreting tax statutes, should not be entitled to the same deferential treatment. Nevertheless, our recent cases have clearly eschewed the concept that an agency is better equipped to interpret a statute than an appellate court. See, *e.g., Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 21, 248 P.3d 1287 (2011) (doctrine of operative construction has lost favor with the Kansas Supreme Court, particularly in cases of statutory construction).

Likewise, KDR claims the benefit of our previously stated construction rule which calls for exemption statutes to be interpreted strictly in favor of imposing the tax and against allowing an exemption for one who does not clearly qualify for the exemption. See *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009). But we have cautioned that the strict construction rule should not lead to an unreasonable interpretation. 289 Kan. at 1211. Moreover, our first step in interpreting a statute is to try to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). Further, the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). Then, finally, when construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *Redd v. Kansas Truck Center*, 291 Kan. 176, 195, 239 P.3d 66 (2010).

We start with the statutory description of the property which is exempt under subsection (kk): "[M]achinery and equipment which are used in this state as an integral or essential part of an integrated production operation by a manufacturing or processing plant or facility." K.S.A. 2010 Supp. 79-3606(kk)(1)(A). KDR does not dispute that LaFarge maintains "a manufacturing or processing plant or facility" on the tract of land where the loaders and haulers are used. Instead, KDR claims that the loaders and haulers are not an essential or integral part of the integrated cement production operation and that the disputed equipment is not used *at* the manufacturing or processing plant or facility.

Before both COTA and this court, KDR made the unsupportable argument that LaFarge's cement production operation does not commence until the limestone is loaded into the hammermill machines, because that is where the raw materials extracted from the quarry are first crushed or processed. COTA recognized that argument as an attempt to apply the narrower "Ohio rule" rather

than Kansas' integrated production operation theory. See *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 891 P.2d 422 (1995); *Duval Sierrita Corp. v. Arizona Dept. of Revenue*, 116 Ariz. 200, 205, 568 P.2d 1098 (1997). Moreover, the argument is directly refuted by the explicit statutory provisions in subsection (kk).

K.S.A. 2010 Supp. 79-3606(kk)(2) assists us by providing a number of definitions. Under subsection (B), "production line" is defined as "where the actual transformation or processing of tangible personal property occurs." At most, the hammermills would be the beginning of the production line, *i.e.*, where the actual transformation of limestone into cement occurs. But the definition of "integrated production operation" in K.S.A. 2010 Supp. 79-3606(kk)(2)(A) encompasses much more. In addition to "[p]roduction line operations," the integrated production operations specifically include *"preproduction* operations to handle, store and treat raw materials." (Emphasis added.) K.S.A. 2010 Supp. 79-3606(kk)(2)(A). Limestone is a raw material for the cement. Prior to loading the limestone into the hammermills to commence the production line operations, LaFarge's preproduction handling and storing of the limestone is essential and integral to its integrated cement production operations.

Likewise, K.S.A. 2010 Supp. 79-3606(kk)(3) assists us by providing a list of uses where the "machinery and equipment shall be deemed to be used as an integral or essential part of an integrated production operation." That list includes: "(A) To receive, transport, convey, handle, treat or store raw materials in preparation of its placement on the production line." K.S.A. 2010 Supp. 79-3606(kk)(3)(A). As applied to LaFarge, the statute contemplates that the integrated cement production operations will require the receiving of limestone from some source and the transporting of it to where it needs to be for handling and storage in preparation for its placement into the hammermills to commence production line operations. The loaders and haulers are used to fulfill those essential functions of the integrated cement production operation.

KDR attempts to divert the analysis to a discussion of whether the excavation of the limestone at the quarry fits the definition of a "manufacturing or processing business" under K.S.A. 2010 Supp. 79-3606(kk)(2)(D). The definition contains some illustrations, in-

cluding the recitation that "processing operations shall include operations at an . . . excavation site where the . . . stone . . . that has been extracted from the earth is cleaned, separated, crushed, ground, milled, screened, washed, or otherwise treated or prepared before its transmission to a refinery or before any other wholesale or retail distribution." K.S.A. 2010 Supp. 79-3606(kk)(2)(D)(i). KDR asserts that the limestone is not processed in any manner described in K.S.A. 2010 Supp. 79-3606(kk)(2)(D)(i), so the third-party excavator of the limestone is not a manufacturing or processing business. Therefore, KDR contends that the loaders and haulers are used in a nonexempt excavation operation.

As COTA found in its original order denying summary judgment to KDR, the agency "conflates, and thus confuses, the physical and non-physical requirements found in the definition of 'manufacturing or processing plant or facility.' " As will be discussed below, to be exempt under subsection (kk), the machinery and equipment must not only be used in an activity which is an essential or integral part of the integrated production operation, but such exempt use must occur at the physical location of the plant or facility. But the definitions and illustrations in K.S.A. 2010 Supp. 79-3606(kk)(2)(D)(i) deal with determining whether the *activity* involved is exempt; the definition in K.S.A. 2010 Supp. 79-3606(kk)(2)(C) addresses the *location* of the plant or facility. Here, we are unconcerned with whether the third-party excavator is a manufacturing or processing business, because the cement plant activities in which LaFarge is engaged unquestionably meet that criterion. And as COTA correctly found in its order on reconsideration, "the loaders and haulers are used in preproduction operations to handle and transport raw materials in preparation for its placement on the production line" of the cement plant or facility.

Turning to a consideration of the physical location of the equipment, we reiterate that to fit the definition of exempt machinery and equipment in K.S.A. 2010 Supp. 79-3606(kk)(1)(A), the equipment must be used *"by* a manufacturing or processing *plant or facility."* (Emphasis added.) That same language was contained in the prior version of the exemption statute. In recognizing the physical component of the exemption in subsection (kk), COTA cited

to our prior decision in *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 132 P.3d 950 (2006), where we found that there is a distinction between property that is being used by the taxpayer and property that is being used by the plant or facility. 281 Kan. at 577. One might ponder whether it is anthropomorphic to suggest that inanimate objects, such as a plant or facility, can *use* machinery and equipment. Nevertheless, *Western Resources* interpreted the language to require that the machinery and equipment had to be used *at* the plant or facility to fit within the 79-3606(kk) exemption.

Nothing in the 2000 amendments suggests a legislative intent to change that ruling. To the contrary, in addition to retaining the "by a manufacturing or processing plant or facility" language in K.S.A. 2010 Supp. 79-3606(kk)(1)(A), the definition of integrated production operation" in K.S.A. 2010 Supp. 79-3606(kk)(2)(A) speaks to "an integrated series of operations *engaged in at* a manufacturing or processing plant or facility." (Emphasis added.) Likewise, K.S.A. 2010 Supp. 79-3606(kk)(5)(C) specifically excludes, *inter alia*, "transportation . . . equipment not primarily used in a production, warehousing or material handling operation *at the plant or facility*." (Emphasis added.) Accordingly, the loaders and haulers must have been used at the physical location of the cement manufacturing or processing plant or facility to be eligible for the 79-3606(kk) sales tax exemption.

The question then is where to draw the boundaries of LaFarge's cement plant or facility. The exemption statute informs us, in K.S.A. 2010 Supp. 79-3606(kk)(2)(C), that

" 'manufacturing or processing plant or facility' means a single, fixed location owned or controlled by a manufacturing or processing business that consists of one or more structures or buildings in a contiguous area where integrated production operations are conducted to manufacture or process tangible personal property to be ultimately sold at retail. Such term shall not include any facility primarily operated for the purpose of conveying or assisting in the conveyance of natural gas, electricity, oil or water. A business may operate one or more manufacturing or processing plants or facilities at different locations to manufacture or process a single product of tangible personal property to be ultimately sold at retail."

Here, the real property on which the loaders and haulers are used is part of a single, fixed location owned by LaFarge. LaFarge,

as we have discussed, is a manufacturing or processing business as defined by K.S.A. 2010 Supp. 79-3606(kk)(2)(D), and the loaders and haulers are an integral or essential part of the integrated production operations for that manufacturing or processing business, notwithstanding KDR's repeated assertion that a nonexempt excavation business is being conducted at the quarry. Further, the term "contiguous" is defined as "[t]ouching at a point or along a boundary; adjoining." Black's Law Dictionary 362 (9th ed. 2009). Using that common meaning, the quarry where the loaders operate and the internal roads where the haulers travel are both in a contiguous area with the one or more structures or buildings LaFarge uses to transform limestone into cement.

KDR suggests that the manufacturing or processing plant or facility only encompasses the area immediately surrounding the hammermills and LaFarge's other processing structures or buildings. That contrived reading of K.S.A. 2010 Supp. 79-3606(kk)(2)(C) discards most of the language the legislature employed and effectively replaces it with the subsection (B) definition of "production line," *i.e.*, "the assemblage of machinery and equipment . . . where the actual transformation or processing of tangible personal property occurs." K.S.A. 2010 Supp. 79-3606(kk)(2)(B). We must decline KDR's suggestion that we cavalierly rewrite the legislation. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010) (appellate courts cannot delete vital provisions or add vital omissions to statute if not permitted by any reasonable interpretation of language used by legislature). The legislature obviously intended the defined boundaries of a manufacturing or processing plant or facility to extend beyond the area immediately surrounding the production line if there are contiguous areas at the single, fixed location where integrated production operations are conducted. And that is precisely the case before us.

Finally, we address KDR's argument that COTA's ruling would allow a business to be sales tax exempt for nonmanufacturing operations if the nonexempt activities are conducted on a single piece of land where exempt manufacturing operations are also occurring. KDR contends that it is common for a manufacturer to operate a

retail store on contiguous land adjacent to its production line. Again, KDR ignores that the equation has two parts: the type of activity and the location of the activity. To be exempt, the machinery and equipment must be both used *by* the manufacturing or processing plant or facility and used *at* the manufacturing or processing plant or facility. So, notwithstanding the retail store's location in a contiguous area, it would not fit within the requirement of K.S.A. 2010 Supp. 79-3606(kk)(2)(C) that it be "where integrated production operations are conducted to manufacture or process tangible personal property." Contrary to KDR's apparent fears, COTA's determination in this case will not propel the area of manufacturing sales tax exemptions down a slippery slope.

In sum, we find that COTA correctly determined that LaFarge was entitled to the sales tax exemption under K.S.A. 2010 Supp. 79-3606(kk) for the repair and replacement parts and accessories it purchased for the loaders and haulers used at its cement plant.

Affirmed.