Nos. 123,488
123,489

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN O. FARMER, INC. and DAMAR RESOURCES, INC.,
*Appellees*,

v.

BOARD OF ELLIS COUNTY COMMISSIONERS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Since property tax exemptions are effective from the date of the first exempt use (K.S.A. 79-213[j]), and mineral leases are appraised as of January 1 each year (K.S.A. 79-301), a property tax exemption under K.S.A. 79-201t is effective January 1 of the tax year in which the mineral lease produced at exempt levels.

2.

A taxpayer is entitled to a refund of property taxes paid on a mineral lease for the tax year in which the mineral lease produced at exempt levels under K.S.A. 79-201t. K.S.A. 79-213(k).

Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed May 6, 2022. Affirmed.

*Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, for appellant.

*Bradley A. Stout*, of Adams Jones Law Firm, P.A., of Wichita, for appellees.

Before HILL, P.J., POWELL and CLINE, JJ.

1

CLINE, J.: John O. Farmer, Inc. and Damar Resources, Inc. (Taxpayers) sought property tax exemptions under K.S.A. 79-201t for tax year 2018 on several oil and gas leases in Ellis County. The Board of Tax Appeals (BOTA) granted the exemptions "commencing with the ad valorem personal property taxes assessed on the 2018 oil production," which effectively made the exemptions applicable to Taxpayers' 2019 taxes but not their 2018 taxes on the leases. Taxpayers appealed to the district court, seeking a determination that their exemptions were effective January 1, 2018. They also sought a refund of their 2018 taxes. The district court found BOTA misinterpreted the law when determining the effective date of the exemptions and ordered the refund. The County appeals, arguing the exemptions should instead be effective January 1, 2019.

Because we find the district court correctly determined BOTA misinterpreted the statutes governing Taxpayers' exemptions, we affirm the district court's ruling which modified BOTA's decision and ordered a refund of Taxpayers' 2018 taxes.

*Proceedings before BOTA*

Taxpayers own mineral leasehold interests in Ellis County, Kansas (the Leases). Kansas taxes oil and gas leases and wells that are producing or capable of producing oil or gas in paying quantities as personal property. K.S.A. 79-329. To that end, mineral leasehold interests in the state must be appraised annually with their fair market value determined as of January 1, for the determination of property taxes owed each year. K.S.A. 79-301; K.S.A. 79-329.

Taxpayers paid property taxes on the Leases in 2018. In March 2019, they timely applied to exempt the Leases from property taxes under K.S.A. 79-201t, which exempts certain low-producing leases from taxation. Taxpayers requested the exemptions be effective January 1, 2018, based on the Leases' 2018 production. The county appraiser

reviewed Taxpayers' exemption applications, confirmed their factual accuracy, and recommended the exemptions be granted without a hearing.

BOTA found the Leases qualified under K.S.A. 79-201t and granted the exemptions "commencing with the ad valorem personal property taxes assessed on the 2018 oil production, and each succeeding year, so long as the property continues to be used for exempt purposes." Taxpayers petitioned for reconsideration, requesting that BOTA clarify they were entitled to a refund of the 2018 property taxes paid on the Leases. BOTA denied the petitions, finding no reason to modify its orders.

*The district court finds Taxpayers' 2018 taxes should be refunded.*

Taxpayers petitioned for judicial review of BOTA's decision in Ellis County District Court. They requested the district court either modify BOTA's order to state that they were entitled to a refund of the 2018 taxes or remand the matter to BOTA with instructions to address whether the 2018 taxes could be assessed against an exempt lease. The district court consolidated the cases involving each lease, and the parties stipulated to the facts. The parties agreed Taxpayers paid ad valorem property taxes on the Leases in 2018. The parties also agreed the Leases produced less than five barrels per day in 2018 and therefore qualified for an exemption from property taxes under K.S.A. 79-201t.

The parties agreed that BOTA used different language when granting prior exemption requests under K.S.A. 79-201t. In the past, BOTA's standard language granted the exemptions "from January 1" of the tax year at issue (here, 2018). This time, BOTA ordered the exemptions "commencing with the ad valorem personal property taxes assessed on the 2018 oil production." According to the parties, this phrasing change is meaningful because Taxpayers would receive a refund of their 2018 property taxes paid on the Leases under the prior language, but not under the new language.

Taxpayers argued that in failing to refund their 2018 taxes, BOTA's orders were unconstitutional, erroneously interpreted or applied the law, were arbitrary and capricious, and failed to decide an issue requiring resolution. The County, for its part, argued BOTA correctly granted exemptions to begin in the 2019 tax year, based on the method used to appraise oil and gas leases in Kansas. Under this method, the prior year's production is generally used to determine a lease's fair market value as of January 1 (with some exceptions not applicable here). Because the 2017 production (which was used to determine the Leases' fair market value as of January 1, 2018) was not at exempt levels, the County argues the Leases should not be exempt from 2018 taxes.

At trial, the district court heard testimony from long-time Ellis County Appraiser Lisa Ree. Ree explained how county appraisers value mineral leasehold interests for ad valorem property tax purposes and how they determine whether a lease qualifies for an exemption under K.S.A. 79-201t. Using a formula supplied by the Department of Property Valuation's annual Oil and Gas Appraisal Guide (the Guide), lease production from the past two years is used to estimate the value of oil remaining in the ground for future production (also called the gross reserve value of a lease). The gross reserve value is then apportioned between the royalty (or landowner) interest and the working (or operator) interest. Under this formula, the first time 2018 production from a lease would be used in calculating the lease's gross reserve value is tax year 2019.

Ree explained that ad valorem property taxes are assessed annually as of January 1 against the gross reserve value. While property taxes are assessed against the gross reserve value, not annual production, the past two years of production are used to estimate the decline rate in the production of the lease and forecast the productive capability of the lease for the next seven years. The forecasted future production, discounted back to present worth, is used as an estimate of the gross reserve value as of January 1 of the given tax year.

Ree also testified that county appraisers across the state disagree about how to interpret BOTA's standard language when granting exemptions under K.S.A. 79-201t. She said some county appraisers interpreted the prior language, which granted the exemption as of January 1 of the year in which production fell below the exempt level, to entitle the taxpayer to a refund for property taxes paid on the gross reserve value for the year in which production fell to exempt levels. Other appraisers took the opposite position and would not grant such refunds. Ree, a board member of the Kansas County Appraiser's Association, said the issue had been a frequent topic of conversation over the years.

Ree interpreted the new wording used in BOTA's order—granting the exemptions on the property taxes "'assessed on the 2018 oil production'"—to mean Taxpayers were not entitled to a refund of their 2018 property taxes. This was because the first time the 2018 oil production would be included in calculating the gross reserve value of the Leases would be for tax year 2019.

The district court also heard testimony from Kevin Hupp II, an oil and gas consultant specializing in ad valorem taxation. Hupp confirmed Ree's description of the assessment process and confusion among county appraisers as to how to interpret the language used in BOTA's previous exemption orders. He testified the appraisal of a mineral lease as of January 1 is an estimate of what the lease will produce for that tax year. And the taxes are assessed based on that projection of future production.

The district court found that BOTA incorrectly interpreted and applied the law in granting an exemption from "property taxes assessed on the 2018 oil production," since property taxes are not assessed on lease production. The court observed that BOTA's language change granted an exemption from a form of taxation which does not exist. The district court found BOTA's new phrasing misinterpreted K.S.A. 79-201t, K.S.A. 79-301 (requiring appraisal of personal property as of the first day of January of each year), and

5

K.S.A. 79-501 (requiring tangible personal property to be appraised at its fair market value).

The district court found the Leases were exempt from property taxes since average daily production on the Leases fell below five barrels per day in 2018, and, under K.S.A. 79-213(j), the exemption applied from the first day of exempt use, which was January 1, 2018. The court also found that BOTA, in failing to order a refund of the taxes for 2018, left a matter unresolved which requires resolution. The court rejected Taxpayers' claim that BOTA's orders were unconstitutional and ordered the County to refund the 2018 property taxes paid on the Leases.

*The County asks us to reverse the district court and affirm BOTA.*

The County claims Taxpayers are not entitled to a refund of their 2018 taxes paid on the Leases since the 2017 production was not at exempt levels. It asks us to reverse the district court and find the exemptions on the Leases should be granted with an effective date of January 1, 2019.

The Kansas Judicial Review Act (KJRA) controls judicial review of BOTA decisions. See K.S.A. 74-2426(c). The district court found that BOTA's orders violated K.S.A. 77-621(c)(3) and (4). Taxpayers, as the parties seeking to invalidate BOTA's action, have the burden to prove BOTA was wrong. K.S.A. 77-621(a)(1). Our review of BOTA's interpretation and application of the law is unlimited and without deference to the agency's view. *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016).

The standards governing judicial interpretation of statutes—including tax statutes—are well known:

6

"Under the Kansas Constitution and statutes, taxation is the rule and exemption is the exception. One claiming exemption from taxation has the burden of showing that the use of the property comes clearly within the exemption claimed. Ordinarily, tax exemption statutes are to be construed strictly in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. However, the strict construction rule is subordinate to the fundamental rule of statutory construction that the intent and purpose of the legislature govern if that intent can be ascertained. [Citations omitted.]" *In re Tax Appeal of Hutchinson's Historic Fox Theatre, Inc.*, No. 90,145, 2003 WL 22119343, at *2 (Kan. App. 2003) (unpublished opinion).

See *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1045, 271 P.3d 732 (2012).

If the statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. *In re Paternity of S.M.J. v. Ogle*, 310 Kan. 211, 212, 444 P.3d 997 (2019). Additionally, courts must consider the various provisions of an act in pari materia to reconcile and bring them into harmony if possible. 310 Kan. at 213.

Article 11, § 1(a) of the Kansas Constitution requires the Legislature to "provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation." K.S.A. 79-329 requires oil and gas leases and wells that are producing or capable of producing oil or gas in paying quantities to be assessed and taxed as personal property. Personal property must be appraised uniformly and equally at its fair market value as of the first day of January each year. See K.S.A. 79-501; K.S.A. 79-1439(a); K.S.A. 79-301. "'Fair market value'" is defined as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market" as of January 1 of a given year. K.S.A. 79-503a.

The Legislature has given the Director of the Division of Property Valuation, a division of the Kansas Department of Revenue, the authority to prescribe guides to help county appraisers establish fair market value for personal property. K.S.A. 75-5105a(b). The annual Oil and Gas Appraisal Guide is one of those guides. This Guide provides a uniform methodology for determining the fair market value of oil and gas leases as of January 1 of the given tax year. The Guide's formula determines the fair market value of any given lease by estimating the lease's "gross reserve value," which is the present value, as of January 1, of all reserves to be recovered in the future over the life of the lease. Thus, property taxes are assessed not against annual production but against the fair market value of the mineral interest itself as of a specific date.

The Legislature has also exempted certain low-producing leases from taxation. K.S.A. 79-201t provides:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"(a) All oil leases, other than royalty interests therein, the average daily production from which is three barrels or less per producing well, or five barrels or less per producing well which has a completion depth of 2,000 feet or more."

Any taxpayer seeking an exemption under this statute, like any exemption from property taxes, must file a request with the county appraiser. After examining the request, the appraiser submits it to BOTA along with the appraiser's recommendation on whether the exemption should be granted and whether a hearing is necessary. BOTA then examines the request and appraiser's recommendation. BOTA may hold a hearing but need not do so. K.S.A. 79-213. If BOTA grants a taxpayer's request for exemption, the exemption is effective "beginning with the date of first exempt use." K.S.A. 79-213(j). "In the event that taxes have been paid during the period where the subject property has been determined to be exempt, the board shall have the authority to order a refund of

8

taxes for the year immediately preceding the year in which the exemption application is filed." K.S.A. 79-213(k).

Although K.S.A. 79-201t exempts oil wells, the "average daily production from which" is equal or below a certain level, it does not state how "average daily production" should be calculated. Under K.S.A. 75-5105a and K.S.A. 79-506, the Director of Property Valuation has provided guidelines for this calculation:

> "Average daily production per well is defined as annual production divided by 365 days divided by the number of producing wells; or, in the case of new leases, actual production divided by the number of actual days produced divided by the number of producing wells. Normal downtime is expected and included in the 365 days. Abandoned or shut-in wells are not included in the calculation as producing wells.
>
> "The statute is specific as to production and no consideration may be given to well shut down, pumping unit, or transportation problems. In these cases, the annual production divided by the actual producing days is to be used to determine the exemption; normal downtime does not qualify as one of these cases. Lease production that began during the year should not be annualized, but should be calculated from the date the lease went into production. The royalty interest and the production equipment do not qualify for the exemption."

*BOTA's new interpretation ignores the Legislature's directive.*

The County, in asking us to affirm BOTA's order, contends that a change in average daily production after January 1 should not have retroactive effect. Since the methodology used to tax oil and gas properties includes any change in production after the January 1 appraisal date in calculating the gross reserve value for the next tax year, the County argues Taxpayers' exemptions should be granted only for that next tax year (here, 2019).

9

On the other hand, Taxpayers argue (and the district court found) that K.S.A. 79-201t grants an exemption from property taxes for any tax year in which annual production is equal or below a certain number of barrels. Because average daily production from each of the Leases fell below five barrels in 2018, the district court found Taxpayers were entitled to an exemption from ad valorem taxes on the Leases for that year. See K.S.A. 79-201t.

As noted by the parties, BOTA previously interpreted the law just like the district court, and another panel of this court has also approved this interpretation. See *In re Tax Exemption Application of Graham-Michaelis Corp.*, 27 Kan. App. 2d 467, 470, 2 P.3d 795 (2000). In *In re Graham-Michaelis Corp.*, Barton County sought review from several BOTA orders granting exemptions under K.S.A. 79-201t for the 1997 tax year. The taxpayers applied for the exemptions in 1998 based on actual production for the 1997 calendar year. BOTA granted the exemptions beginning January 1, 1997, explaining that K.S.A. 79-213(j) required it to grant the tax exemption beginning in the year in which actual production met the statutory standards found at K.S.A. 79-201t.

On appeal, Barton County argued that the taxpayers were only entitled to exemptions for 1998. The panel agreed with BOTA, noting the taxpayers met the requirements under K.S.A. 79-201t and that, under K.S.A. 79-213(j), the exemption was effective as of the date of first exempt use. The panel recognized an ambiguity in K.S.A. 79-201t about how to apply the exemption but explained that the authority to resolve this question had largely been delegated to BOTA. 27 Kan. App. 2d at 470. The panel noted BOTA was a specialized agency whose "decisions should be given great credence and deference when it is acting in its area of expertise." 27 Kan. App. 2d at 469.

The County asserts that we must defer to BOTA's new interpretation of the law, as this court deferred to BOTA's previous interpretation in *In re Graham-Michaelis Corp.* While the County acknowledges that K.S.A. 79-213(j) provides an exemption "shall be

10

effective beginning with the date of first exempt use," it argues that "BOTA retains the right to determine in which tax year the exemption should commence."

Since the decision in *In re Graham-Michaelis Corp.*, Kansas courts have been freed from the deferential yoke previously required when reviewing an agency's interpretation of the statutes it is tasked with administering. See, e.g., *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013) (explaining that the doctrine of operative construction "has been abandoned, abrogated, disallowed, disapproved, ousted, overruled, and permanently relegated to the history books where it will never again affect the outcome of an appeal"). So we need not defer to BOTA's revised interpretation of K.S.A. 79-213(j). And it is the Legislature, not BOTA, who retains the right to determine when tax exemptions should begin.

That said, just because the panel in *In re Graham-Michaelis Corp.* applied a now disfavored deferential standard of review in approving BOTA's previous interpretation does not mean its ultimate decision is invalid. That panel correctly noted BOTA's prior interpretation of K.S.A. 79-213(j) accurately reflected the statutory language, which provides the exemption "shall be effective beginning with the date of first exempt use." On the other hand, BOTA's new interpretation ignores that language.

Since the Leases began producing at exempt levels in 2018, their date of first exempt use was in tax year 2018. And in harmonizing the various statutory provisions, the district court found the specific date of first exempt use was the first day of 2018 since oil and gas leases are appraised as of January 1. See K.S.A. 79-301. As the district court noted, the Guide addresses how fair market value of a lease is determined; it does not address how exemptions are determined. And even if it did, the statutory language would control.

The Legislature clearly intended the exemption to be retroactively applied by allowing Taxpayers to claim it on the first date their Leases qualified. K.S.A. 79-213(j). And, to further underscore this intent, it provided BOTA the authority to refund taxes already paid on property later found to be exempt. K.S.A. 79-213(k). Since a lease is taxed based on a projection of its future production, it only makes sense that those taxes be refunded if the lease produces at exempt levels instead of the projected production levels.

The district court correctly found BOTA misinterpreted the law in its order. Taxpayers are entitled to exemptions with an effective date of January 1, 2018.

The district court also relied on K.S.A. 77-621(c)(3) in granting Taxpayers relief. It found that BOTA, in failing to order a refund of the taxes for 2018, left a matter unresolved which requires resolution. Since we agree the effective date of Taxpayers' exemptions is January 1, 2018, they are entitled to a refund of property taxes they paid for tax year 2018. See K.S.A. 79-213(k). We also affirm the district court's order that the County refund those taxes to the appropriate Taxpayer in each case.

While the County also argues BOTA's orders were not unconstitutional, the district court did not find they were, nor did Taxpayers make this argument on appeal. Therefore, we need not address this issue.

Affirmed.